WILLIAM E. DODGE et al.

*v.*

THE PENNSYLVANIA RAILROAD COMPANY et al.

1. For injuries resulting from the violation or destruction of public rights, in cases where no private individual right is injuriously affected, no private action can be maintained.

2. Except in the instances where statutory provision to the contrary exists,

Dodge *v.* Pennsylvania R. R. Co.

the law gives no compensation for losses resulting from the surrender of public rights.

3. A complainant, to entitle himself to a preliminary injunction to protect a right which he claims in land, must show that, on the undisputed facts of his case, and according to the established law of the state, he possesses the right 'which he claims.

4. A grantee of land abutting on a public street, if his grantor owns the fee of the street, takes to the middle of the street by mere force of legal construction, unless a contrary intention is apparent.

5. And where lands are conveyed as abutting on a proposed street, and the street extends over other lands of the grantor than those conveyed, a right to the use of the proposed street, as a means of passage to and from the lands conveyed, will arise by implication in favor of the grantee on delivery of the deed, and will continue in force until the proposed street becomes a public highway.

6. Whether such private right will merge in the public right when the proposed street becomes a public highway, and will be extinguished with the public right if the street be afterwards vacated, or will revive on vacation, is a question on which judicial opinion is at variance, and is, as a matter of law, unsettled in this state.

7. Nothing short of the threatened destruction of property of great value by acts of wanton lawlessness, inflicting injuries which must result in irreparable damage, will justify the granting of an injunction staying an important public work.

On application for an injunction, heard on bill and affidavits on the part of the complainants, and affidavits on the part of the defendants.

*Mr. William C. Spencer, Mr. Edward A. Day* and *Mr. Theodore Runyon,* for the complainants.

*Mr. James B. Vredenburgh, Mr. Gilbert Collins* and *Mr. Joseph D. Bedle,* for the defendants.

VAN FLEET, V. C.

Three hundred and ninety-five feet of a highway in Jersey City, known as Green street, have been vacated by the proper authority of that city. The general direction of Green street is from north to south, extending from Harsimus Cove on the north, to the basin of the Morris canal on the south. The part

vacated is now covered by the tracks of the Pennsylvania Railroad Company. The tracks and the street are on the same level, running, however, in different directions—the tracks run from west to east, and the street from north to south. The residue of the street, both north and south of the part vacated, will be left intact and remain a public highway. The public right in the street, to the extent above indicated, has been surrendered to enable the Pennsylvania Railroad Company to elevate the tracks of their road in Jersey City, from Brunswick street—a point about fifteen hundred yards west of Green street—to the end of their road. This surrender was made in fulfillment of a contract, made by Jersey City with the Pennsylvania Railroad Company, under the authority of a statute passed in 1874. That statute enacts, " that the proper municipal authorities, respectively, of any city of this state, be and they are hereby authorized and empowered to enter into such contracts with any of the railroad companies whose roads enter their cities, respectively, to secure greater safety to persons and property therein, whereby said railroad companies may relocate, change or elevate their railroads within said cities, or either of them, as in the judgment of such municipal authorities, respectively, may be best adapted to secure the safety of lives and property and promote the interests of said cities, respectively, and for that purpose shall have power to vacate, alter the lines and change the grades of any streets or highways therein, and to do all such acts as may be necessary and proper to effectually carry out such contracts ; and any such contracts, made by any railroad company or companies with said cities or either of them, are hereby fully ratified and confirmed." *Rev. p. 944* § *163*. The plan adopted by the Pennsylvania Railroad Company, for the elevation of their road, and approved by the proper municipal authority of Jersey City, renders it necessary that that part of Green street which has been vacated shall be closed; and the street at that point was vacated for the purpose of authorizing the railroad company to construct the road-bed, on which their elevated tracks are to be laid, within the lines of the street. There is no dispute that if the defendants are allowed to carry out their present purposes, Green street, to the extent that it has been

Dodge v. Pennsylvania R. R. Co.

vacated, will be effectually and permanently destroyed as a way
of any kind. The complainants claim that the destruction of
that part of the street, which has been vacated, will do them irrep-
arable injury, and they ask to be protected against such injury by
injunction.

The complainants own lands on both sides of Green street, but
none on that part of it which has been vacated. Their lands lie
over five hundred feet to the north of the place where the street
has been vacated, with a cross street intervening between their
lands and the place vacated. Their lands are improved. Their
bill describes their improvements on the west side of the street
as "planing mills, lumber sheds, and other buildings for box
manufacturing and woodworking and storing lumber;" and, on
the east side of the street, as "a brick building, for office and
business purposes." The complainants' title originated in two
deeds made by a corporation known as the Associates of the
Jersey Company, the first bearing date May 20th, 1844, and the
second April 2d, 1845. Long prior to the date of these deeds,
and as early as 1804, Green street, although then under the tide-
waters of the Hudson river, both in front of the lands now
owned by the complainants, and at the point where it has been
vacated, was, in legal theory at least, a public highway. The
Associates of the Jersey Company were, by their charter, made
competent to take title to certain lands in fee, and to grant and
dispose of the same at their pleasure, and they were also granted
important municipal powers. They were given power to make
and lay out streets. This power, it has been decided, embraced
not only the upland which they were authorized to acquire, but
also land under water. *Jersey City* v. *Morris Canal Co., 1 Beas.
545.* They exercised the power of laying out streets by making
a map on which the streets they intended to establish were laid
down. This map was subsequently filed. It is known as the
Mangin map. Green street appears upon it. It is one of the
streets laid out by the Associates. The streets laid down on this
map became at once, on the adoption of the map, in consequence
of the dual character in which the Associates acted, public high-
ways. Mr. Justice Whelpley, speaking for the court of errors

Dodge *v.* Pennsylvania R. R. Co.

and appeals in the case just cited, said: "When, therefore, they [the Associates] laid out these streets, they acted as owners of the fee in presenting the lands to the public for streets, and also as a municipal corporation in accepting them on behalf of the public, so that when the Mangin map was completed and adopted by them as the plan of their city, the streets laid down upon it became such by an act of dedication made by the owners of the fee, and immediately accepted by a competent authority on behalf of the public, and also by act of laying out by legislative authority." The lands now owned by the complainants were conveyed by the Associates to the persons in whom the complainants' title originated—to the founders of their title—by direct reference to the Mangin map. They were described in the deeds made by the Associates as laid down on that map, and as abutting on and bounded by Green street, and they have been so described in each subsequent conveyance down to those under which the complainants hold. The complainants contend, that these conveyances, according to well-settled principles of legal construction, vested in their predecessors in title, and consequently in them as the successors to that title, an easement and right of way over all the streets laid down on the Mangin map, and particularly in and over Green street, as appurtenant to the lands conveyed, which right, they insist, constitutes a part of their private property, of which they cannot, without a violation of their constitutional rights, be deprived without their consent, unless just compensation be first made. The defendants do not intend to make compensation.

The private right thus claimed is the sole foundation of this action. It has no other. Indeed, it can have no other. For injuries resulting from the violation or destruction of public rights, in cases where no private individual right is injuriously affected, no private action can be maintained. Such wrongs can only be redressed by a suit on behalf of the public, either by indictment, or an information by the attorney-general. The established rule on this subject is too familiar to require the citation of authorities. The public right in that part of this street, which has been vacated, has been surrendered. That sur-

Dodge v. Pennsylvania R. R. Co.

render has been declared valid by the supreme court. Subsequently to the filing of the bill in this case, an application was made for a *certiorari* to remove the proceeding by which the vacation was effected. The writ was refused, the court declaring that the public right had been surrendered by competent authority exercising a valid power. "A public road," as was said by Judge Black, in *Paul* v. *Carver, 24 Pa. St. 207,* "belongs to nobody but the state; and, when the government sees proper to vacate it, the consequential loss, if any there be, must be borne by those who suffer it, just as they would bear what might result from a refusal to make it in the first place." Except in the instances where statutory provision to the contrary exists, the law gives no compensation for losses resulting from a valid surrender of public rights. And this is so because ours, being a government by the people, such surrenders can only be made by the people's representatives, and, as they generally hold office for short periods of time, and must exercise their power in the face of the people, it is assumed that their power, in this respect, will never be exercised, except when the public good imperatively demands it.

The complainants, to entitle themselves to the writ they ask, must have demonstrated that, on the undisputed facts of this case, and according to the established law of this state, they have such right, in that part of Green street which has been vacated as they claim. The rule upon this subject is jurisdictional. It is a limitation upon the power of the court, which the court cannot transcend. *Citizens' Coach Co.* v. *Camden Horse R. R. Co., 2 Stew. Eq. 299; Hart* v. *Leonard, 15 Stew. Eq. 416.* The point in dispute, it will be perceived, presents a pure question of legal title, which may be stated as follows: What right did the deeds, made by the Associates, grant to the complainants' original predecessors in title, in Green street, not in front of the lands conveyed, nor in that part of Green street extending both north and south of the lands conveyed to the two next adjacent cross streets, but in that part of Green street which lay entirely beyond the two next adjacent cross streets? As to the fee of the street in front of the lands conveyed, the law is settled. A

Dodge v. Pennsylvania R. R. Co.

grantee, in such case, if his grantor owns the fee of the street in front of the land conveyed, takes to the middle of the street, by mere force of legal construction, unless a contrary intention is apparent on the face of the deed, or is unmistakably shown by the situation of the parties, and the nature and character of the transaction. *Salter* v. *Jonas, 10 Vr. 469*. And it would seem also to be settled, that where a grantor conveys land as abutting on a proposed street, and the street extends over other lands of the grantor than those conveyed, a right to the use of the proposed street, as a means of passage to and from the land conveyed, will arise, by implication, in favor of the grantee on the delivery of the deed, and continue in force until the proposed street becomes a public highway. This is the doctrine established by *Booraem* v. *North Hudson County R. R. Co., 13 Stew. Eq. 557*, as I understand that case. The language of the learned justice, who drew up the opinion of the court of errors and appeals in that case, on this point, is as follows: " Whenever a dedication of a public highway is effected—as it usually is—by means of conveyances to private persons by reference to a proposed street, over other lands of the grantor, the private rights of the several grantees precede·the public right, and are the source from which the public right springs. By such conveyances, the grantees are regarded as purchasers, by implied covenant, of the right to the use of the street, as a means of passage to and from their premises, as appurtenant to the premises granted, and this private right of way in the grantees, is wholly distinct from, and independent of, the right of passage to be acquired by the public." This right in the street, which is thus recognized as passing to the grantees, rests entirely upon implication; for, if regard were had alone to the words used to describe the thing granted, and they were construed according to their natural sense, and as they are universally understood when applied to any other monument as a boundary, it is clear that all right in the street would have to be held to be excluded, for the street is mentioned, not as a part of the subject of the grant, but as defining the limit or boundary of the thing granted. They take the grantee to the street, but give him nothing in it.

Such implication is, however, made in cases, like the one mentioned in the opinion just quoted, to give effect to what has been described as "the paramount intent of the parties, as disclosed by the whole scope of the conveyance, and the nature of the property granted;" and where land is conveyed as abutting on a proposed street, before a public highway in fact exists there, and a way over such proposed street is essential to the beneficial enjoyment of the land granted, or even a desirable accessory to it, the implication that until the proposed street becomes an actual highway, the grantee shall have the use of it as a means of passage to and from his land, seems not only to be reasonable and just, but absolutely necessary, to give effect to the manifest intention of the parties. But that case, it will be observed, differs, in a very material respect, from the case in hand. The lands here were conveyed, not as abutting on a proposed street, but on a street which was a public highway in law. When that is the case, the grantee gets everything which it can be said he expected to get, or which he supposed the grantor intended to grant to him, and there is, therefore, nothing to be supplied by implication.

The precise question, then, which this case presents is this: Is it settled, as a matter of law in this state, that if any part of a public street, is at any time subsequent to the date of a conveyance of land abutting on it, abandoned or surrendered, that the grantee named in such conveyance takes, by implied grant or covenant, a private right of way over that part of the street in which the public right has been extinguished? I know of no case, decided by a superior court in this state, which so declares the law. None was cited on the argument of this motion. The question is one on which the courts of our sister states are at variance. The opinion in *Booraem* v. *North Hudson County R. R. Co.*, *supra*, says: "There is some controversy whether the private right of way in grantees, holding by such conveyances, is merged in the public right when the dedication is consummated by public acceptance, or whether it is merely suspended thereby, and will revive if the public right is afterwards abandoned." There are several adjudications made by courts, distinguished for

the ability and learning of their judges, which hold, that when the public right attaches, the preceding private right is thereby extinguished, and that if the public right is subsequently surrendered, the adjacent owner takes the land to the middle of the street, discharged of all right of way. *Mercer* v. *Pittsburgh, Fort Wayne and Chicago R. R. Co., 36 Pa. St. 99 ; Kings Co. Fire Insurance Co.* v. *Stevens, 101 N. Y. 411 ; Kimball* v. *City of Kenosha, 4 Wis. 321,* and *Bailey* v. *Culver, 84 Mo. 531,* are cases of this class. The adjudications standing in conflict with this view are perhaps more numerous than those supporting it, but which of the two conflicting doctrines is most consonant with right reason and sound public policy, this court has no authority to decide. That question, like all other questions of legal title, falls within the exclusive jurisdiction of another tribunal.

The case mainly relied on by the complainants, in vindication of the right on which they found their claim to an injunction, is *Clark* v. *City of Elizabeth, 11 Vr. 172.* The disputed question in that case was whether Clark, the plaintiff, was entitled to compensation for the land which the city authorities were about to take for a street. Clark, in 1869, conveyed certain of his lands and described them as abutting on a street called Bayway. Bayway, at the date of the conveyance, had not been opened as a street in front of the land conveyed, but had been previously laid out as a street by commissioners having authority for that purpose, and so designated on a map made by them. When the city, in 1870, proceeded to appropriate the land for street purposes, Clark claimed compensation. The lands he conveyed in 1869 were not only described as abutting on Bayway, but a direct reference was made, in the description of them, to the commissioners' map. The question which the case presented for judgment was, whether or not Clark had not, by his deed, so effectually dedicated his lands, within the lines of the street, to public use, as to to extinguish all right to compensation? Both the supreme court and the court of errors and appeals decided that he had. The distinguished chancellor, who wrote the opinion of the court of errors and appeals, says in substance, *arguendo,* to demonstrate that Clark had no right to be compen-

sated for the land taken, that Clark's grantee, in the deed of 1869, acquired, by implied covenant, a right of way over all Clark's land in the site of the street, not only to the two next adjacent cross streets, but as far as his lands extended. This was said, it must be remembered, in a case where the grantee was not before the court as a party, and where his rights were in no way presented for adjudication, and where the facts out of which the controversy grew were altogether different from those involved in the present litigation.

But, if we adopt the rule laid down in this opinion as a correct statement of the law on this subject, we are still without an authority vindicating the legal right set up by the complainants in this case. The right of way, which by this rule is accorded to a grantee, is limited to the land of his grantor in the site of the street at the date of his conveyance. That is its utmost extent. His grantor, it is certain, could not, even by an express grant, give him a right in the lands of another person, nor in lands previously granted out by him to another person; much less would it be possible to effect such a result by means of a presumption or implication. The complainants' title originated, as has already been stated, in 1844 and 1845. Prior to that date, and as early as 1838, the proofs show that the defendants' predecessors in title—the New Jersey Railroad and Transportation Company—were in possession of that part of Green street which has been vacated, and were using it for railroad purposes, and that they and the defendants have continued to so use it, without interruption or disturbance, from that time to the present. At the time the complainants' predecessors in title acquired title to the lands which the complainants now hold, the *locus in quo* was located very near the eastern terminus of the defendants' railroad, opposite the city of New York, and where, it was obvious, that it would be necessary, as the business of the railroad increased, that the railroad corporation should provide itself, from time to time, with additional terminal facilities to enable it to discharge its duties properly to the public. There are now on the *locus in quo* thirty-three different railroad tracks, and a train movement of some kind, over some part of it, every

thirty seconds each secular day, from six o'clock in the morning to six o'clock in the evening. The defendants' use of the *locus in quo* is practically exclusive, and has been so for years. The source of their title is not shown, but the fact that they have been in undisturbed possession for nearly fifty years, making such use of the land as for a large part of that time has been exclusive, would seem to exclude all doubt that they hold by a title which cannot be impeached. Their possession from its commencement must, under the circumstances, be regarded as rightful, and consequently their title must be held to stand prior in date to that of the complainants. The defendants' predecessors in title undoubtedly took the land in question, subject to the public right or easement therein, but that fact does not help the complainants. They claim that they have a private right in the land, distinct entirely from that which the public once held, and to maintain this claim they are bound to establish that it is settled, as a proposition of law, that it was competent for the original grantor of their title to create, by implied covenant, the right which they claim, not in his own lands, but in lands which he had previously granted to another person. That, I think it must be admitted, is a legal proposition which as yet has not received judicial sanction in this state.

The only reported case decided by our courts bearing a close resemblance to the one under consideration is that of *Pruden* v. *Morris and Essex Railroad Company*, reported first in *4 C. E. Gr. 386*, and on appeal in *5 C. E. Gr. 531*. The complainant in that case acquired title to lands abutting on Dickerson street, in the village of Dover, in 1837 and 1839. His grantor had dedicated the land in Dickerson street to public use as a highway as early as 1831. The defendants, in constructing their railroad through Dover, laid a single track, in 1847, longitudinally over Dickerson street. The street was vacated in 1848, and in the same year the defendants obtained a deed from the successors in title of the complainant's grantor, purporting to convey the fee of the street to them. The defendants, in 1867, attempted to lay a second track, longitudinally, over the land which, prior to the vacation, had constituted Dickerson street, but not upon that

half which, by construction of law, passed to the complainant under his deed. The complainant then filed his bill, asking that the defendants be enjoined from laying the second track in front of his lands. Chancellor Zabriskie ordered an injunction to issue. This order, on appeal, was reversed. Mr. Justice Depue, in stating the reasons for reversal, said, among other things: "What rights the complainant acquired in the street beyond the *medium filum viæ*, by his deed of conveyance and the effect of the vacation of the previously existing highway, are questions proper for the determination of a court of law." The questions involved there were the same precisely as those presented here. They are still open and undetermined.

On the ground that the legal right on which the complainants rest their claim to an injunction is, as a matter of law, wholly unsettled, they must be refused the writ they ask. When the *gravamen* of the complainant's case is, as it is here, that the defendant has been guilty of unconscientious conduct in depriving him of the enjoyment of his legal rights, to his irreparable injury, it is a condition precedent to the complainant's right to bring his adversary into a court of conscience, that his adversary's unconscientious conduct shall be either admitted, or shall have been established against him by a judgment at law. *Outcalt* v. *Helme, 15 Stew. Eq. 665.*

It should be said in addition, I think, that if an exactly opposite conclusion had been reached as to the character of the right which constitutes the foundation of the complainants' action, it would still have been the duty of the court to deny the writ they ask. The change which the defendants propose to make in their road is one in which the public have a very deep interest. It will make travel both on the railroad and the highways of Jersey City more expeditious than it is at present, and it will give greater security to human life by removing dangers which now exist, and which imperil it, to a greater or less extent, every day in the year. That the change is proper and necessary, to the end that life and property may be made more secure, and to promote the best interests of Jersey City, is a question which has been finally concluded by the judgment of that municipal body, to

which the legislature thought proper to submit it. From that judgment there can be no appeal to this court, except on the ground of fraud. It is the duty of this court, in ordinary cases affecting purely private rights, and where no public interest is involved, to exercise its prohibitory power with the utmost caution; to compare consequences in advance, to see whether, if it exercises this one of its attributes, it will not inflict upon the defendant greater injury than the complainant will suffer, if it withholds its hand, and leaves him to pursue his ordinary legal remedy, but, in cases like the present, where, if the court acts, an important public work, designed to free public travel from peril, and to give greater security to human life, will be arrested and seriously delayed, nothing short of the threatened destruction of property of great value, by acts of wanton lawlessness, inflicting injuries, which, if not prevented, must result in irreparable damage, will justify the court in issuing a command that the work shall stop. The duty of granting or refusing an injunction is a matter resting in sound discretion. It should never be granted when it will operate oppressively, or contrary to the real justice of the case, or where it is not the fit and appropriate method of redress under all the circumstances of the case, or where it will, or may work a fatal injury.

The injury against which the complainants ask to be protected is one arising entirely from inconvenience. The only harm which it is possible for them to suffer from the closing of Green street is, that, in going from their improvements on Green street to the ferry across the Hudson river, and to some other places, the distance which they will be compelled to travel will be increased between eight and nine hundred feet. Green street, it will be remembered, is to be closed only at a single point, and for a distance of only three hundred and ninety-five feet; all the rest of it is to remain a highway. The next parallel street to the west is distant only four hundred feet from Green street, so that a person, by going from Green street to the next parallel street, thus making a detour from a direct line of about four hundred feet, and then passing along that street to a point beyond the railroad, and then down a cross street another distance of about four hun-

dred feet, will be back again in Green street at a point beyond
where it is to be closed.    The inconvenience arising from this in-
crease in distance can scarcely be regarded as an injury sufficiently
substantial or serious to make the interposition of this court, by
injunction, necessary or proper, when the present condition of
Green street, at the point where it is proposed to close it, is con-
sidered.    There are thirty-three different railroad tracks there,
over which trains are almost constantly moving.    The complain-
ants do not pretend that such occupancy and use of this part of the
street by the defendants is unlawful.    As a way, the street at this
point is neither free, safe nor convenient; on the contrary, it is
almost constantly obstructed by moving trains, which render its
use for the purposes for which a highway is ordinarily used both
difficult and dangerous.    Its condition is such that it is manifest
that no prudent person would attempt to use it for the purposes
of ordinary travel, except under the pressure of an urgent neces-
sity.    There is no proof that the complainants make any use of it
at all.    The only statement upon that subject to be found among
their proofs, is one made by their solicitor, who says, in his affi-
davit: "The premises and buildings on the complainants' land, on
the west side of Green street, are principally occupied by the Dodge
& Bliss Box Company for manufacturing boxes; and that almost
all the boxes made by them are delivered in New York by teams
which go there by the way of Green street and the ferry at the
foot of Exchange Place."    But how many teams go?    One a
day, or one a week?    Where did the affiant get his information
that the teams go by the way of Green street?    Did somebody
tell him, or does he speak from personal knowledge?    That he
speaks from personal knowledge would seem to be scarcely pos-
sible.    He is a lawyer engaged in active practice, distinguished
for his industry and the zeal with which he guards the interests of
his clients, and whose time during the business hours of each
day, it is reasonable to suppose, is wholly occupied by his engage-
ments at his office and in the courts.    The court cannot assume
that, for weeks prior to the filing of the bill in this case, this
gentleman took a position near this crossing, and stood there from
day to day, to see that the teams which carried the boxes made

by this corporation to New York always passed over this crossing, when, if that had been the route which the teams usually took, that fact could have been so easily and satisfactorily established by the oaths of the persons who drove the teams.

Both on the ground that the legal right on which the complainants' action rests is not clear, and that the injury against which they ask to be protected is too insignificant to entitle them to an injunction, their application must be denied, with costs.