Alpaugh v. Wood.

SPENCER M. ALPAUGH et al., appellants,

v.

WILLIAM WOOD et al., respondents.

1. The complainants alleged that the defendants, who were manufacturers of pottery, engaged to pay them, as superintendents, in addition to a stated annual sum, ten per cent. of the net profits of the business, and guaranteed that the same should amount to the annual sum of $2,000 for each of them. They also alleged that the defendants had refused to account and make discovery as to the such net profits. These allegations were admitted by an answer, setting up losses sustained by the defendants from the negligence and want of skill of the complainants.—*Held*, that, upon the face of these pleadings, the complainants were entitled to an account and discovery, and that the losses claimed by the defendants constituted a counter-claim for unliquidated damages which could not be tried in equity.

2. *Held* further, that the bill being for relief as well as for discovery, and it having been made to appear at the final hearing, to the satisfaction of the complainants, that the net profits were not large enough to give them an interest in them, the court would decree a payment to each of the complainants of the annual sum, with interest, of $2,000, according to the defendants' guarantee. In view of the circumstances of the case, and of the statute authorizing recoupment—*Held*, that the decree thus given should be stayed until the defendants should have had an opportunity of testing at law their counter-claim for damages.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Wood v. Alpaugh, 16 Stew. Eq. 455*.

*Mr. G. D. W. Vroom* and *Mr. B. Gummere*, for the appellants.

*Mr. James S. Aitkin*, for the respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

This is a bill for discovery and account. The facts stated in support of this prayer are: That the appellants, being manufacturers of pottery, by an agreement in writing, dated the 7th of

May, 1883, engaged the respondents, who were the complainants in chancery, to take charge of the manufacturing department of their pottery for the term of three years and two months, agreeing to pay each of them for his services the annual sum of $3,000, payable in weekly payments, and also that the two should be entitled to ten per cent. of the net profits of said business during such period, and guaranteeing that such profits should bring in to each of them at least the sum of $2,000 a year. There is a further allegation that the complainants requested the appellants to come to an account and settlement with respect to the net profits of the business, and a prayer that if ten per cent. of such profits did not bring in to each of them as much as $2,000 a year, then that each of them should be paid by the respondents the sum of $2,000 a year, as guaranteed by them. There is also a statement that their weekly wages ("except a small balance due to each of them") were paid weekly during the entire term of service. In the answer it is admitted that the contract in question was made in the manner claimed, alleging, however, that the complainants represented themselves "as skilled and experienced workmen, and fully capable of superintending and conducting the pottery" &c., and that they were employed in reliance on such statements. It is then denied that the "complainants duly discharged the duties required of them by the said agreement," but, on the contrary, in the language of the pleader, "instead of faithfully and in a workmanlike manner performing their said duties, the said complainants willfully neglected the interests of these defendants, and unskillfully conducted the manufacturing department of said pottery, destroying large quantities of material by unskillful mixing and workmanship, and large quantities of ware by the unskillful burning of kilns" &c.

In the light of the admissions of these pleadings, and the uncontested facts of the case, it would seem that the legal and equitable rights of these litigants are perfectly plain.

The contract in question rules the situation. The appellants have never even attempted to rescind it. They stood by and saw it executed, with ample knowledge of these failures in the con-

duct of their business, which they now ascribe to 'want of care or skill on the part of the respondents; and from the time of the inception of the agreement until its close, according to its terms, they paid the weekly wages called for by it.   Under such a condition of affairs, it is too obvious for discussion, that this contract cannot be rescinded, but must be judicially enforced; these parties on the one side, and on the other, must be compelled to perform it, or to make indemnification for its non-performance.

It thus appears that the appellants were compellable to do the following acts: to pay to each of the respondents the annual sum of $2,000, provided ten per cent. of the net earnings of the business did not amount annually to the said aggregate sum of $4,000, and if such earnings exceeded such aggregate sum, then to pay them to the respondents; and, as an incident, existing by necessary implication, that they would, on reasonable demand, render an account of the business showing the net profits.   This latter implied stipulation exists in the contract as plainly as do any of its terms that are defined in set phraseology, as, in its absence, the promise touching a percentage of the net profits would be well-nigh nugatory.

It follows, therefore, that the account thus owing being refused, the respondents' right to the assistance of a court of equity in that respect is indisputable.   Indeed, so clear was the existence of such a right, that the respondents were entitled to an account and a reference to a master on the mere face of the bill and answer.

Nor is there any force in the contention of counsel, that, inasmuch as an account has been now made, with the result that it manifests that the percentage of profits is so small that the respondents are not interested in them, therefore their bill must be dismissed.   This is the result when the bill is purely for discovery, as where the proceeding is in aid of a suit at law.   But the present bill is one for relief as well as for discovery, and it is properly such, as the amount due to the respondents cannot be ascertained except by the intervention of an equitable tribunal.   In such a juncture the court will always decide the entire subject in litigation, having acquired its cognizance for the purpose of

discovery it will retain it for the purpose of relief. It is not necessary to refer to authorities to verify so familiar a doctrine.

In the present instance, instead of the respondents taking, *in limine,* a decree for an account, and at once going before a master, both sides have, on the hearing before the vice-chancellor, entered into a full examination of this manufacturing business with reference to its expenses and products ; and the counsel of the respondents now admits that no profits appear which will give his clients an interest in them, that is to say, ten per cent. on the profits shown will not equal the amount guaranteed to them ; he also declares that his clients do not desire any further accounting, they being willing to accept the sum so guaranteed. The decree should, therefore, direct the payment to each of them at the rate of $2,000 *per annum* for the period embraced in the agreement, with interest from the time the several installments became due. They are also entitled to their costs in the court of chancery.

Such are the obligations of the appellants imposed by the contract in question, and such the result of the application to them of the rules of equity. And in this is comprehended everything that was triable in the case ; and yet there was another subject taken into consideration and finally disposed of by the vice-chancellor, that is, the question whether or not the respondents had broken, to the damage of the appellants, their side of this contract. It was an implied covenant of the respondents that they were possessed of that degree of knowledge and skill that is common to persons occupying such positions as the one they undertook to fill, and there was testimony tending to show the want of such knowledge and skill, and large resultant damages to the appellants from imperfect products and waste of materials. This inquiry was entertained in the court below, and the decision in it was in favor of the respondents ; the appellants now claim that the subject did not fall within the cognizance of the vice-chancellor, and that they have the right to the verdict of a jury on that controversy.

In this contention the appellants are plainly in the right. The position was this : the complainants in chancery complained that the defendants in that proceeding had broken a certain stipula-

tion of their contract, the remedy for which was in a court of conscience; the defendants claimed that the complainants, on their part, had failed to fulfill a certain other stipulation of the same agreement, whereby great loss had ensued, such latter breach of contract being devoid of all equitable characteristics, except such as inhere in every purely legal cause of action. When, therefore, the vice-chancellor decided this latter subject, he passed upon a purely legal demand for unliquidated damages. Such a matter is not cognizable in a court of equity, as has been directly decided by this court in the recent case of *Trotter* v. *Heckscher, 13 Stew. Eq. 612*.

We think, however, that, in view of the circumstances of the present case, and of the fact that under the existing statute (*Rev. p. 868 § 129*) these damages, if any such have arisen, could have been recouped if the respondents had sued at law for their claim, the proper course will be to suspend the enforcement of the decree to which we have found the respondents to be entitled, until a reasonable opportunity shall have been afforded to the appellants to test, by an action at law, the validity of this counterclaim which they have set up.

Let the decree appealed from be reversed, without costs, for the purpose of these modifications.

*Decree unanimously reversed.*