# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

JUNE TERM, 1901.

RICHARD D. NORTON, complainant and respondent,

*v.*

JOHN SINKHORN and CHARLES B. WALTON, partners, &c., defendants and appellants.

[Filed November 15th, 1901.]

1. Bill filed by Norton, a subcontractor, against S. and W., contractors with the county of M. for building a road. The lien was filed under the act passed March 30th, 1892 (*Gen. Stat. p. 2078*), to secure the payment of laborers and others employed upon or furnishing materials in the performance of any work for public improvement in the municipalities of this state.—*Held,* that a proceeding under this act is a proceeding *in rem,* a controversy over the particular fund, involving the amount due the contractor from the municipality for the work done, and the amount due to the lien claimants, respectively. No personal judgment, either for or against

a lien claimant, can be given. Nor does the statute provide for a judgment against a municipality in case the amount due to the contractor exceeds the sums due to the lien claimants.

2. In the suit under this statute the court is required to determine the validity of each lien claimed, the amount due from the municipality to the contractor under his contract, and from the contractor to the respective claimants, and by a decree or order direct the municipality to pay out of the sum found to be due from the municipality to the contractor, to the several claimants, for work done and materials furnished in the execution of said contract, so much as will satisfy their liens or claims, to the extent of the amount due from the municipality to the contractor. The act does not provide for any judgment or decree in favor of the claimants for any balance that may remain due after the fund is exhausted.

3. A set-off with respect to the rights and liabilities of the parties to the suit is considered as a cross action brought by the defendant. The right of set-off is restricted to liquidated damages. If the amount found due to the defendants from the plaintiff shall equal or exceed the amount due the plaintiff on his cause of action, the defendant shall be entitled to a verdict and judgment; and in case the amount due to the defendant shall exceed the amount which shall be due to the plaintiff, the defendant shall have judgment for such excess.

4. Recoupment is a claim in abatement of the damages to be recovered by the plaintiff by reason of the plaintiff's failure to perform obligations which, by the same contract, devolved upon him, whereby the defendant has sustained damages. It applies to cases where the damages are unliquidated as well as where they may be considered liquidated.

5. The complainant's bill set out that the complainant had performed labor and furnished materials, namely, stone, to the contractors, in and about the work of macadamizing and grading a public road under a contract by the defendants with the board of freeholders of the county of M. To this bill the contractors filed an answer, setting up an abatement of the amount alleged to be due from their firm to the complainant because the defendants were obliged to pay the sum of $684 for demurrage to a railroad company on carloads of stone shipped by the defendants, which, by the contract, the complainant was obliged to haul and distribute upon said road, but which the complainant allowed to remain at said stations an undue length of time, thereby subjecting the same to the charge for demurrage aforesaid which the defendants were obliged to pay.—*Held,* (1) that this is not a claim by way of set-off, but is a claim of recoupment for unliquidated damages; (2) that this claim was properly made in the answer. It was also made in the answer by way of cross-bill, which was properly struck out, for the reason that in the proceeding under this statute there could be no judgment in favor of the complainant as against the contractor as a debtor.

6. The order of the chancellor striking out that part of the answer is reversed; the order striking out the answer by way of cross-bill is affirmed, and an order should be entered that the fund be retained in the court of chancery and the case be allowed to stand over until the defendants shall have their damages, arising from the breach of contract by the complainant set out in the answer, assessed in a court of law, within such time and in such manner as the court of chancery may direct.

Norton *v.* Sinkhorn.

On appeal from an order advised by Vice-Chancellor Grey striking out part of the defendants' answer and dismissing cross-bill. See opinion reported in *16 Dick. Ch. Rep. 508.*

*Messrs. Beasley & Walker,* for the appellants.

*Mr. Linton Satterthwait,* for the respondent.

The opinion of the court was delivered by

DEPUE, CHIEF-JUSTICE.

The facts of this case are so fully set out in the opinion of Vice-Chancellor Grey that a brief statement is all that will be necessary here. Briefly, the case is this: The defendants, Sinkhorn & Company, entered into a contract with the board of chosen freeholders of the county of Mercer on the 24th of March, 1900, for the grading and macadamizing of a public road in the county of Mercer. The firm entered upon the performance of the contract and completed it on or about the 27th of October, 1900. The bill charges that, under the contract, the sum of $3,000 was due and payable by the board of freeholders upon the completion and acceptance of the work of macadamizing said road. It also charges that between September 1st, 1900, and October 28th, 1900, the complainant, Norton, performed labor for the said Sinkhorn & Company in and about the work of macadamizing and grading said road and towards the completion and performance of said contract with the board of freeholders, by furnishing to them teams and drivers and carting stone and other materials, and that he sold and delivered to Sinkhorn & Company certain materials which were used in the performance and completion of the road, under said contract, to the amount of $862.50. The bill further charges that on or about the 29th of October, 1900, and within fifteen days after the completion of said work, the complainant filed with the director of the board of freeholders, and with the collector and financial officer of said county, a notice that the complainant claimed a lien on the moneys in the hands or under the control of the board of freeholders of the county of Mercer, due or to

grow due under said contract, pursuant to an act entitled "An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in public improvements in cities, towns, townships and other municipalities in this state," approved March 30th, 1892. *Gen. Stat. p. 2078.* No answer was filed by the county, and the balance due to Sinkhorn & Company from the county is not disputed.

The defendants filed an answer, in the course of which they set up an abatement of the amount alleged to be due from their firm to the complainant, reducing it to the sum of $259.20, because, the defendants aver, that they were obliged to pay the sum of $684 for demurrage to the Pennsylvania Railroad Company, by reason of carloads of stone shipped by the defendants to Windsor and Hightstown, in the county of Mercer, and which, by the terms of the contract between the complainant and the defendants, the complainant was obliged to haul and distribute upon said road, but which the complainant allowed to remain at the said stations for an undue length of time, thereby subjecting the said carloads of stone to the charge for demurrage aforesaid, which the defendants, as the shippers of the same, were obliged to pay. The answer further sets out that the complainant agreed with the defendants to cart said stone in quantities of two hundred tons per day, and by reason of said complainant carting less than two hundred tons per day, as aforesaid, the said claim for demurrage arose, which said claim the defendants would not have been obliged to pay but for the default and neglect of the complainant to perform his contract in that behalf, &c.

The same facts are set out in the answer, by way of a cross-bill, which concludes with a prayer that an account may be taken between the complainant and the defendants, and that, by the order and decree of the court of chancery, the complainant may be decreed to pay to the defendants the true balance and amount owing from him to them, and also for other and further relief.

On notice an order was made by the court of chancery that so much of the answer filed by the defendants as claimed a reduc-

tion from the amount claimed by the complainant for materials furnished and labor performed, &c., on account of the demurrage alleged to have been paid by the defendants on carloads of stone, be and the same was thereby stricken out of said answer, and further, that the answer by way of cross-bill be dismissed. From this order this appeal was taken.

The construction of this statute is settled by the opinion of this court in *Delafield Construction Co.* v. *Sayre, 31 Vr. 449.* This court there held that suits to ascertain and enforce the liens given by the act in question must be brought in the court of chancery. The reasoning upon which that decision was based was that, in such a case, "the court is to determine the validity of each lien claim, the amount due upon it and the amount due to the contractor from the municipality, and is to render judgment directing the municipality to pay over to the several lienors the sums found to be due to them respectively, so far as the fund will go, according to the priority prescribed by the act. * * * There is no provision [in this statute] for a personal judgment against the contractor as a debtor, but the right of the claimants to obtain such judgment against him in other actions is expressly preserved." It was for this reason that this court held that suits under this act were cognizable only in the court of chancery. In other words, the proceeding is *in rem*—a controversy over a particular fund, involving only the amount due to the contractor from the municipality for the work done and the amount due to the lien claimants respectively. Section 8 of the act makes this construction clear. It provides that the court "shall determine the validity of the lien, the amount due from the debtor to the contractor under his contract, and from the contractor to the respective claimants, and shall render judgment directing that the city, town, township or other municipality shall pay over to the claimants for the work done and the materials furnished in the execution of said contract or contracts, whose claims or liens it shall hold to be valid and just, in the order of their priority as determined by said court, to the extent of the sum found due to said claimants from the contractor, so much of said funds or money which may be due from the city, town, township or other municipality

to the contractor, under his contract, against which the lien is filed, as will satisfy their liens or claims, with interest and costs, to the extent of the amount due from said city, town, township or other municipality to said contractor." *Gen. Stat. p. 2079.* The questions raised in this case are controlled by this statute. Where the amount due to the contractor is undisputed, the sole questions for adjudication is the amount due to the lien claimants respectively from the contractor. When that has been ascertained, then the function of the court is to apportion the amount due the contractor among the lien claimants in the proper proportion, provided the fund under the control of the court is sufficient to answer that purpose; if not sufficient, then *pro rata* until the fund in hand is exhausted. At this stage the jurisdiction of the court under the statute ends. No personal judgment, either for or against a lien claimant, can be given; nor does the statute provide for a judgment against a municipality in case the amount due to the contractor exceeds the sums due to the lien claimants.

By statute, a set-off, with respect to the rights and liabilities of the parties to the suit, is considered as a cross-action brought by the defendant. *Practice act* § *134; Gen. Stat. p. 2555.* The statute which gives the right to set-off restricts the right to liquidated damages. It also provides that if, on the trial, the amount found to be due to the defendant on his set-off shall equal or exceed the amount due to the plaintiff on his cause of action, the defendant shall be entitled to a verdict and judgment, which verdict and judgment shall, in case of such excess, be for the amount or balance which shall appear to be due to the defendant on the adjustment and allowance of the debts and demands of the parties under the act. *Gen. Stat. p. 3109.* In *Naylor* v. *Smith, 34 Vr. 596,* it was held by this court that a builder, sued under the Mechanics' Lien act, could not set-off claims due to him from the plaintiff in a different right. Mr. Justice Garrison, in delivering the opinion of the court, uses this language: "The statutory remedy of set-off rests, in spirit and in reason, upon the avoidance of circuity of action, by compelling the adjustment, in one suit, of all such mutual demands as are counter-claims. When, therefore, the legislature

has created an action that does not admit of this mutuality of adjustment, it has created one to which neither the spirit, the reason nor the statute of set-off applies." If the claim set up by the defendants, in their answer, be considered as a set-off or counter-claim, it cannot be made available to the defendants in any proceeding, under the statute, in virtue of which this suit is maintained.

But the defendants' claim, as set out in the answer, is not a counter-claim for liquidated damages, such as would constitute it a set-off. The claim set out in the answer is for unliquidated damages arising from the failure of the complainant to perform his contract according to its terms. The distinction between a set-off and recoupment is well settled. Recoupment, at common law, was a claim in reduction of the amount due to the party. It was defined in section 129 of the Practice act (*Gen. Stat. p. 2555*), and in the second section of the supplement of March 30th, 1896, in these words:

"In actions on contract, whether under seal or not, the defendant may set up as a defence in abatement of the damages to be recovered by the plaintiff, a defect in or partial failure of the consideration of the contract sued on; the defendant may also recoup all damages which he may have sustained by reason of any cause of action arising out of the contract or transaction set forth in the plaintiff's declaration as the foundation of the plaintiff's demand, or connected with the subject of the action." *P. L. of 1896 p. 186.*

It will also be borne in mind that the doctrine of recoupment had been adopted in courts of equity long before it was introduced, by statute, into the practice of courts of law.

The principle that lies at the foundation of this doctrine is that the amount which the plaintiff is entitled to recover shall be abated or reduced by reason of his own failure to perform obligations which, by the same contract, devolved upon him, whereby the defendant has sustained damages. In substance and effect, it may be likened to the reduction of the amount recoverable upon a contract because of a failure of consideration. There is great propriety in the application of that doctrine to cases of this kind. The controversy over the distribution of such a fund concerns all the lien claimants, where there are

Norton *v.* Sinkhorn.

more than one lien claimant. A court of equity cannot "decide as to the extent, justice and priority of the claims of all parties" without considering such a defence, if it is properly presented. Inasmuch as a defendant, under such circumstances, has an option either to use recoupment in reduction of the amount recoverable against him, or to waive it in that action and bring a separate suit to recover his damages, it is settled, by all the cases, that a defendant who has made his election to recoup must give notice of his purpose to do so by an appropriate form of pleading.

In the present case the defendants gave notice of their election to recoup their damages by setting out their claim in the answer. The question then arises as to what disposition shall be made of that part of the answer. The vice-chancellor directed that it be struck out. This ruling appears to have been made on the ground that a court of equity cannot entertain a claim for the recovery of unliquidated damages. This principle is well settled in terms as laid down by the vice-chancellor. *Trotter* v. *Heckscher, 13 Stew. Eq. 656,* and *Alpaugh* v. *Wood, 18 Stew. Eq. 157.* But, nevertheless, we think the order striking out this part of the answer, considered simply as notice of the purpose of the defendants to claim recoupment, was erroneous. We think the fund should be retained in the court of chancery, and the case allowed to stand over until the defendants shall have their damages arising from the breach of contract by the complainant set out in the answer assessed in a court of law, within such time and in such manner as the court of chancery may direct.

That part of the answer which is in the nature of a cross-bill is superfluous, and is not adapted to present the defence. It is true that, by the act of 1896, it is provided that if the amount of such damages recouped shall exceed the demand of the plaintiff, that judgment shall be given in favor of the defendant and against the plaintiff in such action for such excess, with costs; but that part of the statute is inapplicable to this procedure. There is in this statute no provision for a personal judgment against the contractor as a debtor. The proceeding is *in rem*—a controversy over a particular fund, involving only the amount

due to the contractor from the owner and the amount due to the lien claimants respectively. This part of the answer, which is in the nature of a cross-bill, was properly struck out by the vice-chancellor. To that extent, the order appealed from is affirmed; but that part of the order which directed the striking out of the same allegations in the answer should be reversed, and a decree entered in accordance with the views expressed in this opinion.

No costs shall be allowed to either party.

*For reversal*—THE CHIEF JUSTICE, VAN SYCKEL, GARRISON, GUMMERE, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM—11.

*For affirmance*—None.