Complainant in its bill of complaint prays the court to enjoin the Central Railroad Company of New Jersey and P.T. Cox Contracting Company, Incorporated, from performing any work which will disturb the surface of Elizabeth avenue in the city of Elizabeth, as said avenue now exists between Third and Fourth streets, and from in any manner *Page 311 
preventing and interfering with complainant's business and the use of complainant's property.
The matter is before me on motion for a preliminary injunction.
Complainant is the owner of a building especially adapted to the business of storage warehousing located on the southerly side of Elizabeth avenue immediately to the west of the railroad. In order to comply with an order of the board of public utility commissioners directing the elimination of certain grade crossings, it is alleged that the defendants are about to depress the grade of Elizabeth avenue in front of complainant's property to such an extent as will cause its property to depreciate in value, interfere with the conduct of its business, and result in the taking of complainant's land and property for public use, without first making compensation therefor, and without due process of law in violation of its constitutional rights.
The power of the board of public utility commissioners to make such order is found in P.L. 1913 ch. 57, as amended by P.L.1930 ch. 101. The right to require the defendant railroad company to make the necessary changes in streets to conform to the grade fixed by the board of public utility commissioners was sustained in Erie Railroad Co. v. Board of Public UtilityCommissioners, 89 N.J. Law 57; affirmed, 90 N.J. Law 672;103 Atl. Rep. 1052; affirmed, 254 U.S. 394.
Pertinent to the matter here under consideration are sections of P.L. 1913 ch. 57, which provide:
"1. Whenever a public highway and a railroad cross each other at the same level and it shall appear to the board that such crossing is dangerous to public safety, or that the public travel on such highway is impeded thereby, the Board of Public Utility Commissioners may order the company operating such railroad, within such time as said board may fix, to alter such crossing according to plans to be approved by said board, by substituting therefor a crossing not at the grade of such public highway either by carrying such public highway under or over such railroad, or by reconstructing such railroad under or over such public highway, or by vacating, relocating or changing the lines, width, direction or location of such highway and the opening of a new highway in the place of the one ordered vacated. *Page 312 
"2. The entire expense of such alterations, changes, relocation or opening, including damages to adjacent property, shall be paid by such railroad, unless a street railway uses such crossing, in which event the board may order not exceeding ten per centum of such expense directly chargeable to the crossing used by the street railway company, to be paid by the company operating such street railway and the balance to be paid by the company operating such railroad." (Italics mine.)
Section 2 was amended by chapter 101, P.L. 1930, as follows: "2. The entire expense of such alterations, changes, relocation or opening, including damages to adjacent property * * * shall be paid fifty per centum by such railroad company * * * and fifty per centum by said board out of funds provided for that purpose." (Italics mine.) Section 2 was further amended by P.L. 1933ch. 390, to read:
"2. The entire expense of such alterations, changes, re-location or opening, including damages to adjacent property
* * * shall be paid fifty per centum by such railroad company * * * and fifty per centum by said board out of funds to be provided for that purpose; provided, however, that if funds are granted or allotted by the United States Government, or any of its agencies, the said board be and it is hereby authorized and empowered with the consent and approval of the Governor, to allot and credit any or all of the funds so received toward the part of the expense to be borne by such railroad company, or companies." (Italics mine.)
Application was made to the Federal Emergency Administration of Public Works of the United States for aid in financing the construction of the grade crossings in question, and a grant of $2,110,950 was made to the board of public utility commissioners.
It is argued by the solicitor of the complainant that there is here involved what amounts to a taking of complainant's property without first making compensation therefor and without due process of law, and that therefore the railroad company should be enjoined until it exercises its power of condemnation.
Courts will not regard lands as subject to the exercise of the power of eminent domain on the part of the railroad where the legislature has not plainly declared them to be so. Akers v.United New Jersey Railroad Co., 43 N.J. Law 110. *Page 313 
Under the General Railroad act (3 Comp. Stat. p. 4224 §13), any railroad company may acquire property by condemnation "required for the right of way of its main line and branches, not exceeding one hundred feet in width unless more shall be required for slopes of cuts or embankments or retaining walls, and all such other land and property adjoining to such right of way as, in the judgment of the directors the exigencies of business may demand, for the erection of freight and passenger depots, and all other legitimate purposes of the company, upon ascertainment and payment or tender of compensation as prescribed by law; * * *."
The legislature evidently recognizing that under the General Railroad act, the railroad company under such circumstances as exist in the instant case did not possess the power to condemn, amended section 13 of the act (chapter 237, P.L. 1914) to read as follows:
"13. Any railroad company may, either at the time of its organization or construction or thereafter, as occasion may require, take by condemnation any of the land and property required for the right of way of its main line and branches, not exceeding one hundred feet in width, unless more shall be required for slopes of cuts or embankments or retaining walls, and all such other land and property adjoining to such right of way, as in the judgment of the directors the exigencies of business may demand, for the erection of freight and passenger depots, and all other legitimate purposes of the company, andany land and property required for the purpose of complying withany order made by the Board of Public Utility Commissioners, upon ascertainment and payment or tender of compensation as prescribed by law; * * *." (Italics mine.)
But it does not appear by the evidence before me that the board of public utility commissioners by its order found that complainant's property is required or necessary to be taken in order to effect compliance with its order, and therefore the railroad company is without power to condemn under the amendment to the General Railroad act. Nor is it within the power of the board of public utility commissioners to order private property to be taken when such property is not fairly incidental nornecessary to the elimination of the danger or impediment at thecrossing involved. Potter v. Public Utility Commissioners,89 N.J. Law 157. *Page 314 
The further contention of the solicitor for complainant that as a condition for withholding the issuance of an injunction, the court appoint a master to determine and report the amount of complainant's damages so that its damages in this proceeding may be ascertained and decreed, is untenable. The general rule is that unliquidated damages for a tort cannot be recovered in equity. Trotter v. Heckscher, 40 N.J. Eq. 612; Alpaugh v.Wood, 45 N.J. Eq. 153; Norton v. Sinkhorn, 63 N.J. Eq. 313.
There is a class of cases in which this court will ascertain the amount of compensation, but these are cases where the ascertainment is necessary as a condition precedent to the equitable relief which this court is competent to afford. Illustrations are to be found in cases where equity requires that a landowner should be enjoined from maintaining ejectment against a corporation having the power to condemn lands, but at the same time requires that the injunction should be awarded upon terms that the corporation make compensation. The cases are collected by Vice-Chancellor Pitney in Sparks Manufacturing Co.
v. Town of Newton, 57 N.J. Eq. 367 (at p. 393).
Other cases are cases of compensation on a bill for specific performance, of which Melick v. Cross, 62 N.J. Eq. 545, is an instance. Another illustration is Simmons v. Mayor, c., ofPaterson, 60 N.J. Eq. 385, where the right to ascertain compensation was contingent upon the consent of the city. InEggers v. Anderson, 63 N.J. Eq. 264, the jurisdiction of equity was sustained in a case of fraud, and it was held that the value of goods furnished might be ascertained by a master, but that case falls short of sustaining the jurisdiction to ascertain unliquidated damages for a tort. See, also, L. Martin Co. v.L. Martin Wilckes Co., 75 N.J. Eq. 257, where it was held that on a bill to enjoin unfair competition it is not permissible for a court of equity, upon granting an injunction, to decreedamages suffered by complainant in addition to accounting for the profits made by the defendant.
In the instant case, the legislature has provided that the expense of such alterations including damages to adjacent *Page 315 property shall be paid fifty per cent. by the railroad company and fifty per cent. by the board of public utility commissioners. What is here involved in my opinion, is a trespass rather than a taking of property. It certainly was within the power of the legislature to enact that damages should be ascertained for a trespass. And when a remedy for any particular wrong or injury has been provided by statute, the general rule is that no relief in equity can be afforded in such case by injunction. 32 Corp.Jur. 64 § 46.
It is next urged that the injury to complainant is irreparable, mainly upon the ground as I understand it, that the work to be done by defendants will cause complainant's business to be interrupted for such a length of time as will cause complainant the loss of its business.
"Inadequate damage and irreparable injury are not synonymous. All injury, in a sense, is irreparable, but where the only possible compensation is pecuniary there is no reason to hold the damage irreparable." McGann v. La Brecque Co., Inc. (Courtof Errors and Appeals), 91 N.J. Eq. 307.
In cases like the one here under consideration, where, if the court acts, an important public work, designed to free public travel from peril, and to give greater security to human life, will be arrested and seriously delayed, nothing short of the threatened destruction of property of great value, by acts of wanton lawlessness, inflicting injuries, which, if not prevented, must result in irreparable damage, will justify the court in issuing a command that the work shall stop. The duty of granting or refusing an injunction is a matter resting in the sound discretion of the court. Dodge v. Pennsylvania Railroad Co.,43 N.J. Eq. 351; affirmed, 45 N.J. Eq. 366.
The defendant railroad company and the board of public utility commissioners by their answers filed herein say that in order to expedite the completion of the work they are willing to have the court order that adequate security be deposited with the clerk of this court to insure the payment to complainant of the amount of damages that may be determined to be due complainant "in any appropriate legal proceeding." *Page 316 
This may be done where such ascertainment of adequate security is necessary as a condition precedent to any equitable relief which this court is competent to afford.
Having concluded as above, there is no power in the court to make such an order, nor can such power be conferred by consent of counsel or of the parties.
Injunction denied.