LOUIS GILBOUGH and ALFRED P. VREDENBURGH

*v.*

WEST SIDE AMUSEMENT COMPANY.

[Submitted November 10th, 1902. Decided November 15th, 1902. Filed January 26th, 1903.]

The noise caused by the shouts, cheers and stamping of feet of spectators at Sunday ball games, even though constituting a public nuisance, which may be dealt with as such, will be enjoined at the suit of individuals living in the neighborhood; it being such as to appreciably disturb their rest and quiet.

---

On motion for injunction. Heard on bill and affidavits and answering affidavits.

*Mr. Elmer W. Demarest,* for the complainants.

*Mr. William H. Speer,* for the defendant.

PITNEY, V. C.

This is an application for an injunction to restrain the making of noise, which it is alleged renders the dwellings of the complainants, at certain times, uncomfortable to an unlawful degree.

Before going into the facts of the case it may be well to allude briefly to the state of the law on the subject.

That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventive remedy of the court of equity is thoroughly established. The reason why a certain amount of noise is or may be a nuisance is that it is not only disagreeable, but it also wears upon the nervous system, and produces that feeling which we call "tired." That the subjection of a human being to a continued hearing of loud noises tends to shorten life is, I think, beyond all doubt. Another reason is that mankind needs rest and sleep, and noise tends to prevent both.

But then noise is one of the necessary accompaniments of modern civilization, and men as social beings must of necessity subject themselves to whatever annoyance reasonably arises out of all these necessary and useful operations of society, which do, necessarily, produce more or less noise. The ordinary hum of machinery, the noise of vehicles propelled along the public highways, and the like, are examples of this noise. And in considering whether a noise amounts to a nuisance, the question whether or not it is made for a necessary or useful purpose is always taken into consideration. Sometimes the language is "lawful or unlawful purpose;" and a noise which, if made to answer some useful purpose, might be held to be not a nuisance, will, if used for an unlawful or unnecessary purpose, be held to be a nuisance.

So the time when a noise is made is also to be taken into account. Mankind needs sleep for a succession of several hours once in every twenty-four hours, and nature has provided a time for that purpose, to wit, the nighttime, and by common consent of civilized man the night is devoted to rest and sleep, and noises which would not be adjudged nuisances, under the circumstances,

if made in the daytime, will be declared to be nuisances if made at night and during the hours which are usually devoted by the inhabitants of that neighborhood to sleep.

Then, again, the experience of mankind has shown that in addition to the ordinary rest which the workingman—whatever may be the nature of his work, mental or physical, or both—is supposed to obtain each night, he needs occasionally a whole day of complete rest, and this day, by common consent, has been fixed by Christian people to be Sunday, or the first day of the week. In order to maintain that Sunday is a day of rest we need not go into the question of its divine origin or rely upon the truth of the inspiration of the Bible. The fact is that there is abundant ground to believe that the rest of one day in seven may have arisen out of the actual wants of mankind, irrespective of any divine command. Therefore, by common consent, quite independent of any statutory regulation, it may be considered as settled that mankind is entitled to one day in seven for rest and quiet.

But, in addition to that, we have the sanction of what are called the Sunday laws of this state and of many other states, which positively prohibit all work and labor and amusements on that day. To that, again, an exception was made as to all those occupations which are deemed necessary, sometimes called works of necessity and mercy. People travel about on Sunday, and, of late, railroad trains are permitted to run on Sunday; domestic animals have to be provided for, and food for the use of man must also be provided on that day. These, however, are exceptions to the general rule that all business must cease on Sunday. In obedience to this legislation all ordinary business, including all public business, actually does cease on Sunday.

For these reasons it may be properly held that noises which would not be declared to be nuisances on a week-day are held to be nuisances if made on a Sunday, because they have the effect of disturbing that quiet and rest which the citizen, wearied with six days of labor, is entitled to have for his rest and recuperation; and he is entitled to it not because the Sunday laws have declared the making of such noises to be unlawful, but because they

do substantially interfere with his quiet enjoyment of the Sunday as a day of rest. But, on the other hand, the fact that such noise not only does not tend to any useful purpose such as I have mentioned, but is, in fact, forbidden by the laws of the land, takes away from the producer of the noise any excuse whatever therefor.

Turning now to the facts in the present case. The complainants, Gilbough and Vredenburgh, are residents of the city of Bayonne, in the county of Hudson. Their dwellings are situate near each other, in the residential portion of that city, near Newark bay, at its junction with New York harbor, and the bill is filed on behalf of themselves and other residents of the city.

The defendant is a corporation under the name of the West Side Amusement Company, and its objects, which are set out at great length in its articles of incorporation, are indicated by its title.

In the month of August last the defendant purchased several lots of land lying in a body and making a block about four hundred and fifty feet square, and situate from ten to twelve hundred feet from complainants' residences, and enclosed the same by a high board fence, and erected in one corner thereof a grandstand containing seating accommodation for several thousand spectators. On each successive Sunday in September and October it procured to be assembled there a large number of young persons, not only from the immediate neighborhood, but from the adjoining towns and cities, for whose admission it charged twenty-five cents each, and as an attraction for the assembling of these persons, procured to be played base-ball games. The persons who assembled were young, hilarious and enthusiastic, and when excited by witnessing the base-ball games, indulged in loud shouts and stamping on the steps of the grand-stand, thereby producing a noise so loud that it was heard at the complainants' houses, and at other parts of the city much more distant than those houses from the defendant's grounds.

That the noises so produced, if loud enough to appreciably disturb complainants' rest, constitutes a nuisance against which the complainants are entitled to relief in this court, follows necessarily from the principles above laid down.

Some of the authorities applying more directly to the case are *Walker* v. *Brewster, L. R. 5 Eq. Cas. 25 (1867)*. There Vice-Chancellor Wood (afterwards Lord Hatherly) reviews the earlier English cases up to that time, including *Soltau* v. *De Held, 2 Sim. (N. S.) 133*. Another case is *Inchbald* v. *Barrington, L. R. 4 Ch. App. 388 (1868)*. The court there said: "We have now before us evidence of the plaintiff and his wife, corroborated by that of seven independent witnesses, showing that the noise of the performances was heard inside the houses to such a degree as materially to interfere with the comfort of the inhabitants, according to ordinary habits of life. This evidence is uncontradicted, and I am of opinion that it establishes a case of nuisance calling for the interference of this court. * * * It is clear, however, from the evidence before us, which was not before Lord Cairns, that the music and noises in the circus were heard distinctly all over the plaintiff's house for several hours every night. This was something materially interfering with the comfort of the inhabitants, according to ordinary habits of life; and I am of opinion that the injunction in the suit of *Inchbald* v. *Barrington* was rightly granted."

In this country we have *Tanner* v. *Trustees, &c., 5 Hill 121*. There Judge Cowan reviews all the authorities up to that date, and holds that a bowling-alley is a nuisance *per se,* by reason of its tendency to attract and accumulate a large number of disorderly persons. *Snyder* v. *Cabell, 29 W. Va. 48,* held that a skating-rink was a nuisance

These were all cases of noises made on week-days.

The latest case on the subject of base-ball games in New Jersey is *Cronin* v. *Bloemecke, 13 Dick. Ch. Rep. 313,* decided by Vice-Chancellor Emery.

The general subject is dealt with by Chancellor Williamson in *Davidson* v. *Isham, 1 Stock. 186,* and by Chancellor Zabriskie in *Ross* v. *Butler, 4 C. E. Gr. 294,* and again in *Cleveland* v. *Citizens Gas Light Co., 5 C. E. Gr. 201.*

The only remaining question is whether the affidavits presented by the complainants on this motion establish the proposition that the noise from the amusement grounds reached the complainants' houses in such volume as to disturb their rest and quiet.

Mr. Gilbough swears that on the afternoons of September 7th, 14th and 21st and October 12th

"the noise made by the players and persons attending the games, and apparently caused by the cheers and stamping of feet of the spectators, has been so great as not only to be plainly and distinctly heard at my home, but so great as to disturb the enjoyment of my home by myself and the members of my family and also to cause a physical annoyance."

He also swears that the continuation of such noises on Sunday afternoons seriously affects the value of his property.

Mr. Vredenburgh swears that on the same afternoons

"the noises caused by the shouts, cheers and stamping of feet by the spectators in attendance at the games have been so great as not only to be heard plainly at my residence, but it annoyed myself and family in the enjoyment and comfort of our home, and in fact became a physical annoyance. While I believe myself to be a person of ordinary temperament and sensibility, these noises have been so great in volume as to have become a nuisance."

He also swears to the depreciation in value of his property.

Mr. Green swears as to the boisterous and unruly character of the passengers who arrived at the station near the defendant's grounds, saying:

"All the while this crowd was alighting from the train, and until the train started, there was great noise caused by the shouting of these people. From the appearance of the crowd I imagined that either a prize fight or horse race was about to take place."

Mr. Martin R. Cook swears that he lives near the complainants, and characterizes the noise as follows:

"The noise of which caused by shouts and the stamping of feet has been such as to make, it plainly heard at my residence to such an extent as to disturb the comfort and quiet enjoyment of my home by myself and the members of my family."

Mrs. Leman swears that she lives in the immediate neighborhood of the complainants, and that

Gilbough *v.* West Side Amusement Co.

"On Sunday, the 14th day of September, I was confined to my bed by illness and was physically disturbed with tumultuous noises coming from the players and persons attending the base-ball game at the grounds of the West Side Amusement Company. My residence is opposite that of Martin R. Cook. These noises began at about 3:45 in the afternoon and continued until 5:30. o'clock, and had been repeated on other Sundays as well as that above mentioned, during September and October. The noise coming from these grounds has not only been sufficient to disturb me while I was ill and confined to my bed, but have generally disturbed the residents of the neighborhood in which I live."

Mrs. Ellen Humphreys swears that she owns considerable property in the neighborhood and lives near the complainants. She continues:

"The noise caused by cheers, shouts and the stamping of feet is terrific and almost continuous while the games are in progress, frequently varying in volume and often resembles the sounds of near thunder. Upon the occasions when these games were in progress, the members of my family, as well as myself, have been so disturbed in the enjoyment of the comfort of my home as to make the nuisance become almost a physical annoyance."

Frank Lindner swears that he lives nearer to the defendant's grounds than the complainants, and continues as follows:

"On Sunday afternoons of September 7th, 14th and 21st, and October 12th, games of base-ball were played on the grounds of the above-mentioned company. These games have been attended by large crowds of people estimated from 2,500 to 3,000, and the noises at the times these games have been in progress have been terrific, and apparently caused by the yelling, cheering and shouting of the crowds and the stamping of feet of persons seated on the grand-stands erected on the grounds. The noise caused has been so great as to destroy the peace, and comfort of those residing in the vicinity and to prevent my family and myself from the quiet enjoyment of my property."

Charles E. Spencer, who lives farther away from the defendant's grounds than the complainants, swears:

"The noises apparently caused by the shouts, cheers and stamping of feet by the spectators has been so great as to be plainly heard at my place of residence and destroy the comfort of myself and the members of my family."

Mrs. Hammer lives nearer the defendant's grounds, and swears:

"These games have been attended by large crowds of people, and the noises at the times these games were being played have been terrific and apparently caused by the yelling, cheering and shouting of the crowds and the stamping of feet of persons seated on the grand-stand erected on the grounds. The noise caused has been so great as to destroy the peace and comfort of those residing in the vicinity, and to prevent my family and many of my boarders from the quiet enjoyment of Sunday. My mother was lying ill on Sunday, September 21st, and these noises distinctly disturbed her and added greatly to her suffering. I have found the noise on these occasions to be almost unbearable."

Frank Thompson lives farther away from the grounds than the complainants, and swears as follows:

"When these games are in progress the noise heard at my house is terrific, and was so great as to disturb the comfort of my home for myself and the members of my family. The noises coming from these grounds, on the occasions when games are being played, have been so great as to be plainly heard for more than a half mile distant therefrom, and to such extent that people residing within half a mile from the grounds have been greatly disturbed in the enjoyment of their homes."

The Rev. Mr. MacGregor swears as follows:

"On Sunday, September 14th, while returning from Sunday-school, I heard a great noise. These noises I continued to hear while endeavoring to quietly enjoy rest while sitting on the veranda after returning home. A little later, while going to visit a sick young man and while walking to and from on Fourth street, Avenue D and First street, I continued to hear these noises. I found that the cause was due to a game of base-ball which was being played on the ground of the West Side Amusement Company. On the afternoon of September 21st I was in my study in the Bergen Point Baptist Church, between the hours of four and five-fifteen, great noise was again heard which greatly disturbed me. So great was the noise that I was obliged to close the windows of my study in order to have quietness. Similar noise was also distinctly heard on Sunday, October 12th, which I heard while taking a walk on Fourth street as well as returning on Fifth street."

He further swears that a mass-meeting was held by the citizens of the neighborhood to take measures against the nuisance at defendant's grounds, and that after the meeting he had a conversation with the manager of the defendant association, a Mr. Ryan,

Gilbough *v.* West Side Amusement Co.

and told him that the meeting had passed a resolution to abate the nuisance, and that Ryan told him that the games would continue; and that he told Ryan that legal steps would be taken, if necessary, to put an end to the nuisance, and that Ryan told him that they would fight it.

Cornelius W. Conover, who resides more than a quarter of a mile distant from the defendant's grounds, swears that on the afternoons in question

"I was at my home but greatly disturbed with loud noises which were made by the spectators and players attending the game upon the grounds of the West Side Amusement Company. Such noises were caused by cheering, so far as I could determine from their nature, but were so great as to physically annoy me and disturb the enjoyment of my property. I believe I am a person of ordinary sensibility, but these noises were so great as to create a positive annoyance at my home."

Numerous other witnesses swear to the same effect.

Against these affidavits are several produced by the defendant, made by persons who live near the grounds, to the effect that the noise, although heard by them, does not annoy them. Their general tendency is to minimize the volume and general effect of the noise.

It was said by Vice-Chancellor Knight-Bruce, in *Walter v. Selfe, 15 Jur. 416* (at *p. 419*), who was there dealing with the question of injury from the gases of a brickyard, that the point to be decided was: "Ought this inconvenience to be considered, in fact, as more than fanciful, or as one of mere delicacy or fastidiousness—as an inconvenience materially interfering with the ordinary comfort physically of human existence, not merely according to elegant or dainty modes and habits of living, but according to plain, sober and simple notions among the English people? And I am of opinion that this point is against the defendant."

This canon has been adopted by many subsequent judges in that country and in this, and was quoted with approbation by Vice-Chancellor Wood in *Soltau v. De Held, supra.*

In the class of cases of nuisance arising out of lawful trades the question of degree is one of great importance. Some trades are so noisy as to require their actual prohibition at all times

from the neighborhood of any dwelling. Others, producing less noise, are prohibited only in the nighttime, on the principle that while they do more or less disturb during waking hours, they are still not intolerable during those hours, and being carried on for a useful purpose, must be endured to that extent.;

But I think that the question of degree applies with very little, if any, force to the case of noises made on Sunday; and the same may be said of the distinction between an over-sensitive and highly-nervous person and the average person spoken of by Vice-Chancellor Knight-Bruce. As before remarked, there can be no sort of excuse for the noises proven in this case; and if they do appreciably disturb the rest and quiet of an ordinary person, they must be enjoined when complained of by the individual.

The fact that they may amount to a public nuisance, and may be liable to be dealt with as such, does not prevent this court from giving a remedy to the individual who is especially injured thereby. *Cronin* v. *Bloemecke, supra.*

So with regard to their *quasi* criminal character. This court does not restrain an action simply because of its character in that regard, nor does it refrain from so doing on that account.

Whenever a private right is invaded and this court is called upon to protect it, and a proper case is made out, this court is bound to give the remedy, without regard to the criminal, or *quasi* criminal, character of the act complained of.

In fact, the public remedy by punishment for the commission of a criminal act is not a remedy upon which the private citizen can with safety rely, or one upon which he is bound to rely.

A careful reading of the affidavits leads me to the conclusion that the noise in this case does appreciably disturb the rest and quiet of the complainants on Sunday, and of other persons in like situation, and is greater than they are bound to endure.

For these reasons I will advise an order that the defendant, pending the suit and until the further order of the court, be restrained from permitting any noise or noises to be made upon its premises on Sunday which shall disturb the complainants or their families in the manner and to the extent above stated.