JOHN McMILLAN et al.

*v.*

LOUIS KUEHNLE and EDWARD BADER.

[Decided September 14th, 1909.]

1. The playing of baseball on Sundays will be enjoined if it be made to appear that the noise and disorderly conduct attendant upon the games being held forth amounts to a nuisance in the neighborhood, whereby the peace and quiet of the Sabbath is disturbed and the rest which the complainants are entitled to enjoy on that day is appreciably affected; each case must stand or fall on the question of nuisance or no nuisance, as the court of chancery has no jurisdiction to enforce, by injunction, the Sunday laws, so called.

2. Noises which are not nuisances on a week-day may be nuisances when made on a Sunday, if they have the effect of disturbing that quiet and rest which the citizen is entitled to have for his recuperation; and the fact that such noises are forbidden by the laws of the land (the Sunday laws) takes away any defence for the making of them on Sunday even though they be but slight.

3. A preliminary injunction will issue to restrain Sunday baseball playing upon the affidavits of six or seven persons residing in the neighborhood where the games are held forth, which show a case of nuisance, even though more than forty persons similarly situated swear that the noises are quite inappreciable and not at all disturbing, if there be no proof before the court that the complainants are morbidly sensitive; the case not being one turning upon the preponderance of evidence as to the extent and character of the noise so much as it does but upon the question whether the affidavits on behalf of the defendants show the affiants on behalf of the complainants to be untruthful as to the existence of the noise, and as it is notorious that many people are not disturbed by noises which affect some people similarly situated, in the absence of proof that the complainants and their witnesses are morbidly sensitive, it will be presumed that they are persons of ordinary sensibility and are truthful concerning the existence of the nuisance as to themselves.

On application for preliminary injunction. Heard on bill and affidavits, and affidavits on the part of the defendants.

*Mr. Charles E. Sheppard* and *Mr. Edwin G. O. Bleakly,* for the complainants.

*Mr. George A. Bourgeois,* for the defendants.

WALKER, V. C.

The bill is filed by John McMillan and John H. Goldsmith, on behalf of themselves and other residents of Atlantic City, among them being those whose affidavits are annexed to the bill. Those making affidavits besides the two complainants are: Mrs. Ellen Goldsmith, wife of one of the complainants; Robert Ingram, and Harriet A. Ingram, his wife; Mrs. Frances Young and Mrs. Mary Reynolds.

The object sought by the bill is to restrain the defendants from holding forth baseball games at Inlet Park, Atlantic City, on Sundays, because of an alleged nuisance attendant thereon by way of noise and disorderly conduct which disturbs the peace and quiet of the Sabbath, and interferes with the rest to which the complainants are of right entitled to enjoy on that day.

The case stands or falls on the question of nuisance or no nuisance, as the court of chancery has no power to enforce, by injunction, the Sunday laws, so called. That jurisdiction belongs to another tribunal.

The complainant Mr. McMillan, who is a clergyman, swears that baseball games had been carried on at Inlet Baseball Park, Atlantic City, for some five or six Sundays before the making of his affidavit, which was on August 25th ult. (1909); that his residence is about two squares from the park, and that large crowds attend the games, and that in going to and returning therefrom make loud noises and sounds which are an annoyance to himself and the neighborhood, and a disturbance of the peace and quiet of the neighborhood, but he says nothing about sounds emanating from the grounds; he also says that quite a large number of the boys in his Sunday-school absent themselves, and attend the games on Sabbath afternoons. With this last feature of his complaint the court has nothing to do.

The complainant Goldsmith swears that he lives about a block and a half, or six hundred feet, from the park, and that on Sunday afternoons crowds of people in carriages, in automobiles and on foot, pass by, to and from the games, making loud noises, and that during the progress of the games there is frequently heard

17

very loud cheering and shouting, yelling and screaming and stamping of feet on the stands, all of which is very plainly heard at his residence and is greatly annoying and interferes with the comfort of his house for himself and his family, and destroys the peace and quiet of the neighborhood during the time.

Mrs. Ellen Goldsmith swears that she has been greatly annoyed in her house and her peace and comfort greatly disturbed by the noise and confusion made by those going to and returning from the ball games at the park on Sundays, and by the cheering and screaming, yelling and hooting, and stamping of feet on the boards by those within the park attending the games.

Robert Ingram swears that he resides about one and a half squares, or two hundred yards, from the park, where baseball is played on Sundays, and that a large number of teams, automobiles and carriages, loaded with men and women, who, with many others on foot, going to and returning from the games, pass along the street in front of his residence, cheering, hooting and shouting, and that during the progress of the games the cheering, shouting and screeching of the crowds attending are plainly heard at his residence and greatly annoy himself and his family.

Mrs. Harriet A. Ingram, wife of Robert Ingram, swears that since the baseball games have been carried on at the park on Sundays, noise and confusion, screaming, cheering and hallooing of the crowds of people in the park while the games were on, and the stamping of feet on the stands by the spectators were plainly heard at their house and disturbed the peace and quietness of Sunday for them; that the crowds of people on foot and in carriages and automobiles, passing along in front and near to their residences, going to and returning from the games on Sundays, also greatly disturbed the comfort of their house and its peace and quiet.

Mrs. Frances Young swears that she lives with her husband and family of children about one and a half squares from the park; that the cheering, hallooing and shouting of persons attending the ball games on Sundays can be plainly heard at their residence and is very annoying and disturbs the peace and quiet of their home; that the crowds, going to the games and returning from them, pass by their home in large numbers, many of them

shouting and using profane and vile language, which can be plainly heard from their house, and is a great annoyance and nuisance to them.

Mrs. Mary Reynolds swears that she resides about two blocks or squares from the park where the games of baseball are carried on on Sundays, and that teams, automobiles and foot people go by her house, to and from the games, and make a loud noise, disturbing herself and the neighborhood.

The proofs on the part of the defendants, who admittedly control and operate the Inlet Baseball Park, show that lands near or adjoining the park are used as a terminal of the trolley line (which extends from Longport to the inlet), where its terminal building and waiting-room and also a hotel and restaurant, around which is a two-story pavilion, and another hotel, are situate; also, nearby, is a pier from which approximately one hundred sailing yachts, of various sizes, make daily or hourly excursions or trips down Absecon inlet and out upon the Atlantic ocean, which yachts daily carry great numbers of people, extending into the thousands, on sailing trips, great numbers of people taking those trips on Sunday afternoons; that great numbers of people visit the hotels, or one of them, especially on Sundays, and enjoy the refreshments that may be purchased; that there are automobile lines running from various parts of the city to the inlet, and that large numbers of busses carry people to and fro, and that the majority of the people who go to the inlet from the boardwalk along the Atlantic ocean reach it by automobiles and busses, the trolley line not touching the boardwalk except at two points.

The affidavits of over forty people living near to the park were produced, many of them living much nearer than those whose affidavits are annexed to the complainants' bill, who swore that none or very little noise or applause was heard coming from the baseball park, while games were held forth there, and that what was heard was no annoyance whatever to people living in its vicinity, nor was the conduct on the part of the crowds going to or returning from the inlet on Sundays of the character mentioned by the complainants' witnesses; in fact, that it was not annoying.

If the issue were as to a certain well-defined physical fact presumably within the knowledge of all of the affiants—such as, did a certain sound occur at midday or midnight—the defendants would prevail upon the clear weight and preponderance of the evidence; but, the issue is as to facts not so clearly defined, but is as to facts which different people see and hear differently, according to their different natures.

The criterion for determining whether or not a particular use of property is a nuisance, is its effect upon persons of ordinary health and sensibility, and ordinary modes of living, and not upon those who, on the one hand, are morbid or fastidious, or peculiarly susceptible to the thing complained of, or, on the other hand, are unusually insensible thereto. *21 Am. & Eng. Encycl. L. (2d ed.) 689.*

There is no evidence before the court on this hearing to the effect that the complainants and affiants are morbidly sensitive as to the sounds that form the gravamen of the complaint, except that it may be inferred that such is the fact because of the overwhelming proof of those residing in the same neighborhood that the noises spoken of by the complainants are quite inappreciable and not at all disturbing. This feature of the case may perhaps be gone into on final hearing. The question, as I understand it, does not turn upon the preponderance of the evidence as to the extent and character of the noises so much as it does upon the question whether the affidavits on behalf of the defendants show the affiants on behalf of the complainants to be untruthful as to the existence of the noises. Because innumerable witnesses living in the vicinity of the ball grounds say that they are not annoyed, either by persons passing their houses to and from the park or by the demonstrations of those in the park and upon the stands, that does not necessarily show that others, comparatively few though they be, may not be annoyed and suffer great inconvenience, amounting to a nuisance, from the facts to which I have just adverted. It is notorious that many people living near railroads and factories become so accustomed to the noises emanating therefrom as not to notice them, while, on the contrary, some people, similarly situated, can never be oblivious to them.

The law governing the matter under consideration is to be found in the three cases in this court of *Cronin* v. *Bloemecke, 58 N. J. Eq.* (*13 Dick.*) *313,* decided by Vice-Chancellor Emery in 1899; *Gilbough* v. *West Side Amusement Co., 64 N. J. Eq.* (*19 Dick.*) *27,* decided by Vice-Chancellor Pitney in 1902, and *Seastream* v. *New Jersey Exhibition Co., 67 N. J. Eq.* (*1 Robb.*) *178,* decided by Vice-Chancellor Pitney in 1904.

The decision in the *Seastream Case* went upon the ground that some five or six of the complainants who resided in the neighborhood of the park were disturbed by the noise of the shouts and applause from the grounds on Sundays when ball games were played, and that several others of the complainants suffered from the noise and unruly conduct of the great crowds alighting from and boarding trolley cars in front of their residences and in going to and from the park and the trolley. *67 N. J. Eq.* (*1 Robb.*) *181.* In the case before me seven affiants swear to a state of facts tending to show that a nuisance is created by the holding forth of the ball games at the Inlet Park, Atlantic City, on Sundays, two of them, the Rev. Mr. McMillan and Mrs. Reynolds, speaking only to the question of noise and unruly conduct by the crowds going to and returning from the games, while the other five testify to a nuisance created upon and about the park at the playing of the games.

The question whether those suffering from one or the other of two kinds of annoyance, namely, that on the highways leading to and from the baseball grounds, and that emanating from the grounds while games are in progress, may join in the same bill of complaint, was raised in the *Seastream Case,* but was left undecided, as no demurrer was filed and the defendant had not been embarrassed in presenting its defence. *67 N. J. Eq.* (*1 Robb.*) *187.* The question of misjoinder was not even raised upon the argument of this cause, and will, therefore, not be considered.

A parallel to be found in the *Seastream Case* is, that the defence was there made that the ball ground was not the only place to which people resorted who went by the premises of the complainants and annoyed them. It was shown that Newark bay was only a slight distance from the ball grounds and that

people were attracted to its shores for amusements on Sundays, consisting of boating, crabbing, fishing and picknicking, and that independent of the baseball playing a large crowd on Sundays habitually resorted to the neighborhood by means of the trolley, alighting at the very same part of the avenue and creating precisely the same nuisance as was complained of on account of the baseball crowds. *67 N. J. Eq. (1 Robb.) 185.* Vice-Chancellor Pitney did not think that that state of affairs estopped the complainants from asserting their rights against the defendants.

The case of Gilbough was also a Sunday baseball case. The fact of the nuisance was disputed. In that case (Gilbough) affidavits produced by the defendant made by persons who lived near the grounds were to the effect that the noise, although heard by them, did not annoy them. *64 N. J. Eq. (19 Dick.) 35.* In the case now being considered some of the numerous witnesses for the defendants said that they heard noises, but that they were slight and not disturbing, and others of them said they heard no noises at all. In the *Gilbough Case* Vice-Chancellor Pitney said that the noises, if loud enough to appreciably disturb complainants' rest, constituted a nuisance against which they were entitled to relief in this court. *64 N. J. Eq. (19 Dick.) 30.*

In the *Cronin Case,* which was a case of disorderly baseball games played on weekdays and on Sundays, Vice-Chancellor Emery says that the protection of one's dwelling-house against nuisances which render it uncomfortable is a right which has been constantly protected in this court by preliminary injunction, even when the existence of the nuisance is disputed. *58 N. J. Eq. (13 Dick.) 317.*

In the unreported case of *Rausch* v. *Glazer (May term, 1908),* which was a nuisance case heard before me, and in which the question was as to stenches emanating from a rendering establishment, I took occasion to observe that the nuisance being established by satisfactory testimony, the evidence was not overcome by testimony of a negative kind; that testimony of some of the neighbors that they were not annoyed did not disprove that the complainant and his family were annoyed.

Another phase of the case under consideration was dealt with by Vice-Chancellor Pitney in the *Gilbough Case.* He said that

noises which would not be declared to be nuisances on a weekday are held to be nuisances if made on a Sunday, because they have the effect of disturbing that quiet and rest which the citizen, wearied with six days of labor, is entitled to have for his recuperation, and that the fact that such noise is forbidden by the laws of the land (the Sunday laws) takes away from the producer any excuse therefor (*64 N. J. Eq.* (*19 Dick.*) *29, 30*), that is, as I understand it, takes away his defence so far as that defence may be any justification for the making of disturbing noises at the given time, even though they be but slight.

In the earlier cases of Cronin and Gilbough the court dealt with the character of the injunction that should go for the relief of the complainants. In the *Cronin Case* the restraint went against the use of the park for the purpose of baseball games so that a nuisance might be occasioned to the annoyance and injury of the complainant and his family at his residence, the games not being prohibited entirely (*58 N. J. Eq.* (*13 Dick.*) *316, 317*), and in the *Gilbough Case* the injunction went restraining the defendant from permitting any noise or noises to be made upon its premises on Sunday which should disturb the complainants or their families, there being no prohibition of the games themselves (*64 N. J. Eq.* (*19 Dick.*) *36*), but, in the *Seastream Case,* the law having previously been so well settled, the injunction went restraining the playing of baseball on Sundays altogether. *67 N. J. Eq.* (*1 Robb.*) *187.*

Now, applying the law, as I understand it, to the facts of this case, as I understand them, I am constrained, following the last and culminating decision, to advise the issuance of an injunction against the playing of baseball games on Sundays at the Inlet Park, Atlantic City, until the final hearing of this cause, and until the further order of the court to the contrary.

It may not be amiss to state again that an injunction does not issue in a cause like this upon any theory of enforcing observance of the Sunday laws. It goes only to protect the citizen against a nuisance which appreciably affects him. If the question before me had not already been passed upon by this court I should feel inclined to do no more than advise an injunction restraining the defendants from holding forth baseball games in such way or

manner as to disturb and annoy the complainants at their residence, but, as already remarked, I feel bound to follow the *Seastream Case,* which appears to be a good deal like this one, and to grant an injunction restraining the games altogether. If this decision be erroneous there is a court above me to which the defendants may resort for correction of the error.

The order to show cause will be made absolute, with costs to abide the event of the suit.