JOHN TERHUNE

*v.*

THE TRUSTEES OF THE METHODIST EPISCOPAL CHURCH OF MATAWAN.

[Submitted January 15th, 1917.    Decided February 27th, 1917.]

1. Under the facts proved in this case—*Held*, that there was no agreement on complainant's part to make no complaint of the noise made by a church clock in striking the hours.

2. Evidence *held* to show that such noise was a personal annoyance and discomfort to complainant sufficient to entitle him to relief.

3. Where complainant had moved into his residence some time after the bell had been installed and rung for ordinary church services, he could not restrain such ringing as a nuisance, but the striking of the hours on the clock will be restrained.

Heard on bill, answer, replication and proofs.

*Mr. Jacob R. Van Mater Lefferts* and *Mr. Gilbert Collins,* for the complainant.

*Messrs. Fort & Fort,* for the defendant.

FOSTER, V. C.

The bill in this case is filed to restrain the defendants from making a noise by the ringing of a church bell, caused by the striking thereon of the hours; this noise, it is alleged, being of such an unusual degree as to render the dwelling of complainant uncomfortable and to amount to a nuisance.

On the hearing it developed that complainant resides in Matawan in a house on the south side of the church building and twenty-two feet distant therefrom.

For a number of years there has been a bell in the church steeple which was regularly rung for the usual church services. About 1914 the Brown estate presented the church with a clock, and the installation of the clock in the steeple was completed on February 26th, 1915, by being connected with the bell so that it would strike the hours. The bell, which is made of bell metal, measures thirty-five inches from its base to the top; it is forty-five inches in diameter at the bottom and twenty-five inches at the top, and weighs two thousand and fifty pounds; and the hours are struck on it from seven A. M. to ten P. M., inclusive, by means of a hammer weighing forty pounds. By means of an apparatus attached to the clock, this hammer drops a distance of seven and one-half inches and strikes the outside of the bell in ringing the hours, and it takes about twenty-eight seconds for the longest hour to strike, and, in addition to the ringing of the bell on Sunday and at other times for the regular church services, the clock strikes the hours fifteen times between seven A. M. and ten P. M.

The bell is fifty-eight and thirty-two hundredths feet from the ground, and the distance from the centre of the bell to the upper windows of complainant's house is forty-six and four-tenths feet; the distance from the bell to the windows in the living room on the lower floor of his house is fifty-two and eight-tenths feet; the bell has a very loud tone, and when the hours are struck on it they can be heard for a distance of from two and one-half to four and one-half miles. Complainant and members of his family and guests and visitors at his home, as well as occupants of houses adjoining complainant's house on the south and adjoining the church on the north, and also residents across the street from the church, say the bell has a very loud, harsh tone; that it is annoying and discomforting to them at all times, and that at some times it is startling; that in some cases, and particularly in complainant's home, all conversation must cease while the hours are struck; that conversations over the telephone while the bell is striking is impossible; that complainant and

members of his family have been obliged to leave his piazza and to close the windows in their rooms because of the noise caused by the bell striking the hours; that if complainant or members of his family retire before ten P. M., they are awakened by the noise of the bell striking the hours; and complainant and his family, and some of his neighbors, say it is impossible, because of this noise, for them to obtain sleep during the daytime if the nature of their work or their condition requires them to do so. Mr. Duncan, a produce commission merchant, whose business makes it necessary for him to sleep during the day, and whose home adjoins that of complainant, states that the noise of the bell awakens him and spoils his rest. It wakens him with a start; it has made him nervous and he had been obliged because of the noise to leave his bed and dress and wait downstairs until it was time to take a train to his business; he and members of his family say they cannot carry on a conversation in their rooms or over the telephone while the hours are striking. Other residents in the neighborhood of the church testify to the same effect. Complainant and others say the vibrations caused by the striking of the hours is very severe, shaking the house sometimes; and that the noise is loud enough to echo through the house. And one of the witnesses, who moved from the vicinity of the church, described the noise produced by striking the hours as a "very loud, booming sound; it used to seem to hit the house; * * * it used to wake up the child when he had his nap in the daytime and in the evening when he went to bed."

The defendants have produced a number of witnesses, some of whom reside or do business in the immediate vicinity of the church, and none of them find the noise of the bell annoying or discomforting; most of them think the bell has a pleasant sound and like to hear it; and some of them find the striking of the hours a convenience in telling the time, and that it does not interfere with conversations in their homes or places of business.

This testimony, so far as it relates to complainant's case, is, of course, merely negative, and it does not overcome the positive proof of complainant and others who have suffered annoyance, discomfort and injury from the noise complained of, and I am satisfied that this annoyance and discomfort to complainant and

others is real and not imaginary, and that it is the sole basis for his complaint.

During the hearing and on the briefs of counsel attention was called to an agreement or understanding said to have been reached between complainant and the trustees of the church at or about the time the clock was installed, which, it is claimed, estops complainant from objecting to the noise about which he now complains. The basis for this contention is, that some time in October, 1914, Mr. Terhune spoke to Mr. Bedle, the president of the board of trustees of the church, about the installation of the clock, and that complainant offered to pay the debt of the church if the clock were not installed; Mr. Bedle told him that as the clock was a gift the trustees would have to install it, but that they would try to arrange so that the hours would not be struck between ten P. M. and seven A. M., and that complainant thereupon remarked, "All right, that settles it."

I am unable to find that this was an agreement on complainant's part to make no complaint about the noise caused by the bell. The clock had not then been installed; it was not installed and the bell did not begin striking the hours until the latter part of the following February, and I am unable to say that by the remark quoted, or any other statement attributed to him in the record, complainant bound himself to submit for all time without complaint to such annoyance, discomfort and injury as the noise of the bell should cause him.

I am satisfied that complainant has shown that the noise caused by the ringing of this bell in striking the hours causes him and others positive personal annoyance and discomfort to such a degree as to entitle him to relief from what is to him and others clearly a nuisance. And, in reaching this conclusion, I have taken into account the degree and character of the noise, and also the circumstances and necessity for its occurrence, and also the time or hours of its occurrence, and there is nothing before me to show the necessity for this noise, or that in any way a useful or public service is rendered to the community by the striking of the hours on this bell. This conclusion, I think, is in accordance with the rule stated in *Kroecker* v. *Camden Coke Co.,*

*82 N. J. Eq. 373,* and the cases collected there, including *Seligman* v. *Victor Company, 71 N. J. Eq. 697; affirmed, 72 N. J. Eq. 946,* and in *Roessler & Hasslacher Chemical Co.* v. *Doyle, 73 N. J. Law 521; affirmed, 74 N. J. Law 850,* and *Gilbough* v. *West Side Amusement Co., 53 Atl. Rep. 289.*

As complainant moved into his present residence some time after the bell had been installed and had been rung for years for ordinary church services, I do not find that he has shown his right to have defendants restrained from continuing the ringing of the bell for such purposes, but a decree will be advised that defendants be restrained from having the bell rung or struck for the purpose of announcing the hours.