THE SHELBURNE, INCORPORATED,. complainant,

*v.*

CROSSAN CORPORATION et al., defendants.

[Decided November 21st, 1923.]

1. Where an electric sign is so operated that it shines into and disturbs the rest of occupants of bedrooms in an adjacent hotel, it becomes a nuisance if it interferes with the ordinary physical comfort of those occupying the rooms.

2. Where the hotel employs musicians and provides music and dancing in a room adjacent to the bedrooms affected by the light from the electric sign, it cannot complain of the disturbance of rest caused by the light from the electric sign during those hours when the music and dancing are permitted to go on, as that also interferes with the rest and physical comfort of the occupants of the rooms affected by the light from the sign.

On bill for injunction.

*Mr. Louis E. Stern,* for the complainant. ·

*Messrs. Thompson & Hanstein (Mr. Hervey S. Moore* and *Mr. Emerson L. Richards),* for the defendants.

INGERSOLL, V. C.

The complainant is the owner of, and conducts a large hotel known as, the Shelburne, situate on the boardwalk at Michigan avenue, in Atlantic City.

This hotel has been operated at this location for many years, and has recently been greatly enlarged, by the addition of a brick, concrete and steel structure of one hundred and twenty-one rooms. About sixty of these are bedrooms, having southerly or southwesterly exposure.

The defendant Crossan Company is the owner of property immediately adjoining to the southwestward of the Shelburne property, upon which is erected an apartment-house, the roof of which is rented by that company to the defendant R. C. Maxwell Company, for sign purposes.

The defendant Maxwell Company, being in the business of building and operating signs, entered into a contract with the defendant Colgate Company, agreeing to furnish and operate for Colgate Company a sign in Atlantic City—not specifying the location. In compliance with said contract it has erected and operated a sign constructed of angle-irons, wire conduits, receptacles and lamps, which, with the under-structure and supports of heavy beams, weighs about twenty tons. The sign is sixty-six feet high and seventy-two feet long.

Upon and composing the lettering and ornamentation of this sign are one thousand and eighty-four fifteen-watt lights, all of which are colored; six one-hundred-watt lights and twenty-eight seventy-five-watt lights; the latter are used for the indirect lighting of a figure of a thermometer on the sign. All the lights on the sign are steady-burning and without speed effect.

This location has been under the control of the Maxwell Company for sign purposes for a number of years and has been used by it for at least three other signs (advertising other products). It has been testified that the lights in the present sign are only about ten per cent. in power of at least one of the previous signs.

The new wing of the Shelburne is at, or nearly at, right angles to the boardwalk, and the sign is practically parallel with the wing and about one hundred and ten feet south-westerly therefrom. The face or front of the sign is toward the Shelburne, and the lights therefrom shine into some of the bedrooms, in the new wing of the hotel.

The sign in question is illuminated or operated from the "time it begins to be dark until about twelve o'clock" (at the time of the hearing, daylight saving time). J. Haines Lippincott, a witness produced on the part of the complainant, testified that he visited the Shelburne after twelve o'clock the night before he gave his testimony, and the lights of the sign were then burning.

It is testified that this sign "lights up the entire room of forty or forty-five rooms of the new wing of the hotel and thereby disturbs the guests, and by reason thereof lowers

the value of those rooms and thereby seriously affects detrimentally the business of the complainant."

The complainant admits that, for the purpose of dancing and other amusement of its guests, it provides an orchestra composed of six pieces, including a piano and drums. This orchestra plays and dancing is permitted (and indulged in) until about twelve o'clock at night, in a room known as the "orange room," which is "directly under the part of the new wing which is nearest to the Colgate sign."

Some time before the new wing was built, which was completed in July, 1922, a bill was filed in this court complaining of "the continuous flashing [of the lights] and the noise of the sign itself and the candle power." This bill was abandoned because the defendants therein caused the flashing to be stopped, and lowered the candle power, and, further, because very few rooms were affected.

Although many signs of the nature of the one in question are located along the boardwalk, this one is apparently the only one built parallel with any hotel building and with light directly projecting into bedrooms, although others exist, the lights of which shine into bedrooms, but upon an angle.

Although expert testimony was produced by the defendants to the effect, that in many of the rooms of the hotel no illumination was caused by the sign, and in none was there any serious effect caused by the light from the sign. I cannot but believe that the amount of light radiating from the sign does illuminate or "light up" many of the rooms facing it, and in some instances, at least, to such an extent as to be objectionable to the guests.

Atlantic City is a seashore resort, catering to visitors desiring comfort, rest, recreation or to recuperate from illness, from all sections of the world. Its boardwalk is, and the hotels along this boardwalk are, famed throughout not only this country, but in every civilized country. In addition to the business of catering to guests, and by reason partly, at least, of the cosmopolitan character of these guests, there has grown up the custom of operating electric and other signs along this boardwalk. In fact, the testimony shows that the

boardwalk is considered as one of the best advertising locations in the country.

There can be little, if any, doubt that light radiating from lamps of the intensity, and, when placed in the position of those in the sign in question, may become a nuisance, if it (the light) materially interferes with the ordinary comfort, physically, of human existence. *Cleveland* v. *Citizens Gaslight and Power Co., 20 N. J. Eq.* (at *p. 205*).

It is not claimed that the sign is a nuisance in the daytime and when not illuminated.

The prayer in the bill is "that the defendant * * * be restrained from exhibiting, operating and maintaining any electric contrivance or sign * * * in such manner as to create a nuisance by the light it radiates," &c.

Vice-Chancellor Leaming, in *Seligman* v. *Victor Talking Machine Co., 71 N. J. Eq. 697* (at *p. 700*), said: "It is well recognized, however, in cases of nuisance, that the things to be taken into account include not only the degree and character of the annoyance and the circumstances under which it occurs, but also the time of its occurrence. As is well said by Vice-Chancellor Pitney, in *Gilbough* v. *West Side Amusement Co., 64 N. J. Eq.* (at *p. 28*) *(1902)*: 'So the time when a noise is made is also to be taken into account. Mankind needs sleep for a succession of several hours once in every twenty-four hours, and nature has provided a time for that purpose, to wit, the night-time, and by common consent of civilized man the night is devoted to rest and sleep, and noises which would not be adjudged nuisances, under circumstances, if made in the daytime, will be declared to be nuisances if made at night, during the hours which are usually devoted by the inhabitants of that neighborhood to sleep.'

"Many other authorities are to the same effect. *Kerr Inj.* (*3d ed.*) *216 note 37; Wood Nuis.* (*2d ed.*) ¶ *613; 21 Am. & Eng. Encycl. L.* (*2d ed.*) *697 note 3.*"

The complainant has fixed its own hour, prior to which it is not entitled to relief. Surely the light complained of cannot be considered as a nuisance upon the ground that guests are unable to procure necessary sleep, when the complainant

at the same time causes an orchestra, loud in its nature, to play, and dancing to be indulged it, in close proximity to the rooms alleged to be affected.

The testimony of Mr. Weikel, the president and general manager of the complainant, is, as before stated, that the sign is in operation until about twelve o'clock, and the orchestra plays until twelve o'clock. I am satisfied that, in view of all the facts as presented, that the operation of this sign prior to twelve o'clock at night would not entitle the complainant to have the relief prayed for; but the witness Lippincott testified that the sign was operated after twelve o'clock at night, at least upon one occasion.

I am of the opinion that the complainant is entitled to a decree against the defendant Maxwell Company restraining the operation of the electric sign in question during each night after the hour of twelve o'clock midnight, and will advise a decree to that effect.