This matter is before me on the return of an order to show cause why preliminary injunction should not issue on a bill of complaint brought by The Central Railroad Company of New Jersey and the Board of Public Utility Commissioners of the State of New Jersey against Emanuel Simandl, Benton and Holden, Incorporated, and Anna Miskiw.
The Central Railroad Company of New Jersey was ordered by the Board of Public Utility Commissioners, on July 23d 1935, to eliminate certain grade crossings from its Elizabeth-port and Perth Amboy branch, in the city of Elizabeth, among which is the crossing at Elizabeth avenue, the elimination of these crossings to be accomplished by depressing the grade of streets and raising the grade of the railroad. The order required the work to be completed by November 1st, 1938.
The railroad company, in order to comply with the order of the board, received a grant of $2,110,950 from the federal administrator of public works pursuant to the Emergency Relief act of 1935, which grant was made upon the application of the Board of Public Utility Commissioners to aid the railroad in defraying its share of the cost of the elimination of said crossings.
On April 15th, 1937, the railroad company entered into contract with the P.T. Cox Contracting Company, Incorporated, for the performance of the work necessary to be done in order to carry out the order of the board. The estimated *Page 209 
cost of the improvement, exclusive of damages to adjacent property, is the sum of $4,691,000, fifty per centum of which cost, under Rev. Stat. 48:12-62, including damages to adjacent property, is to be paid by the complainant Board of Public Utility Commissioners. Sufficient funds are now in the possession of the board to satisfy the cost of the work and to pay all damages to adjacent property, when such damages shall have been legally determined. Out of the funds on hand, the board has already expended toward its share of the cost of construction, the sum of $852,672.89.
The defendants, Emanuel Simandl, Benton and Holden, Incorporated, and Anna Miskiw, severally own property fronting on Elizabeth avenue, which property will be affected by the depression of said street. On several occasions, when the work of excavating in front of the property of the respective defendants was attempted by the employes of the contractor and the employes of the railroad, the defendants, it is charged, in various ways interfered with the progress of the work and by the use of threats and actual assault and battery committed upon such workmen and employes, prevented the work from being done.
Heretofore a bill of complaint was presented to the court by The Central Railroad Company of New Jersey and the P.T. Cox Contracting Company, Incorporated, complainants, against these same defendants. The complaint charged the defendants with disorderly conduct, threats and assault and battery. On that occasion, the court declined to entertain the complaint for lack of jurisdiction, upon the well established and familiar principle that courts of equity never exercise jurisdiction based solely on the right of a suitor to prevent the commission of a crime or its continuance. Neither will injunction lie merely to compel public officers to perform their duties respecting enforcement of the criminal law, nor to prevent the commission of crime. Ocean CityAssociation v. Schurch, 57 N.J. Eq. 268, 271; Gilbough v.West Side Amusement Co., 64 N.J. Eq. 27, 36; McMillan v.Kuehnle, 76 N.J. Eq. 256, 263 (approved on this point on appeal, 78 N.J. Eq. 251, 252); Green v. Piper, 80 N.J. Eq. 288. *Page 210 
However, the allegations of the present bill of complaint sustained by the proofs now show that before any further attempt to do the necessary work in compliance with the order of the Board of Public Utility Commissioners was undertaken, the complainant The Central Railroad Company of New Jersey notified the city authorities that such attempt to work would be made; that when the attempt was made, the chief of police of the city of Elizabeth, the police captain of the precinct in which the Elizabeth avenue crossing is located, and a detail of policemen were present and, when the workmen and employes of the contractor and of the complainant The Central Railroad Company of New Jersey, attempted to make excavation within the lines of said street in front of the property of the respective defendants, such attempt was forcibly resisted by the defendants who placed themselves in the way of the workmen, and threatened, pushed and shoved the employes and so prevented them from proceeding with the work; that the defendant Benton and Holden, Incorporated, placed a large moving van across the sidewalk and another moving van in the street in front of its property; that these acts were committed in the presence of the police and that the police refused to interfere or prevent said defendants from committing the acts mentioned, or to arrest the offenders.
The defendant Emanuel Simandl does not deny disorderly conduct and assault and battery. He says: "I don't recall that I threatened to get a gun and shoot them" (the workmen). "Irefused to permit them [the workmen] to commence work and demanded that they remove at once." This affiant admits the use of force in the presence of the police on March 21st, 1938, as follows: "I did not use any unreasonable force, * * * we [referring to his son and himself] merely placed a restraining hand on them." Under the law, the least manual touching of the body of another against his will, constitutes an assault and battery.
George Benton, president of the defendant Benton and Holden, Incorporated, while he denies the commission of assault and battery, admits that he so placed his body in front of his company's property, that the workmen could not proceed *Page 211 
with the work without striking his body with the tools which they were using. He says: "* * * as I did not move away, they [the workmen] did not swing their sledge hammers."
The same is true of the defendant Anna Miskiw. She, too, denies the commission of assault and battery but admits that she stopped the progress of the work by placing herself in the street in front of her property in such manner that to proceed with the work without personal injury to her was impossible.
All of the defendants show clearly by their affidavits a purpose to unlawfully resist by force the doing of the work until the railroad company makes settlement with them for any damages they may sustain. But, there is no provision in the law which requires the complainants to pay anticipatory damages as a condition precedent to the making of the improvement. The employes of the contractor and of the under Rev. Stat. 2:202-7, to "interfere with any person lawfully being in and upon such streets" constitutes disorderly railroad company were lawfully in the street in question and conduct on the part of the person so interfering. Why the police did not discharge their duty when the acts admitted by the defendants were committed in their presence is beyond the court's understanding. Their duty was plain.
The evidence, admissions and legal inferences to be drawn from the same show that these defendants, acting in concert, by force and without color of right, have thus far succeeded in preventing the execution of an order of the Board of Public Utility Commissioners, the validity and legality of which is conceded.
The power of the Board of Public Utility Commissioners to make the order of July 23d 1935, directing the elimination of said grade crossings and to require the defendant railroad company to make the necessary changes in streets to conform to the grade fixed by the board was sustained in Erie Railroad Co. v.Public Utility Commissioners, 89 N.J. Law 57; affirmed,90 N.J. Law 672; affirmed, 254 U.S. 394. And it is such common knowledge as that the court will take judicial notice of the fact that the city of Elizabeth *Page 212 
has for a quarter of a century endeavored to bring about the elimination of the crossing in question.
The legislature of this state vested in the Board of Public Utility Commissioners complete authority over streets for the purposes of the order which it made in this matter. The situation therefore presented by the evidence is one where the defendants by the use of threats and force and consequent breaches of the peace are engaged in preventing the making of an improvement affected with a public interest since it is designed to prevent injury to the limbs and to protect the lives of the public. Moreover, the conduct of these defendants is in defiance of the order of a duly constituted tribunal. The failure and refusal of the police to preserve order in this public highway and to prevent breaches of the peace is a denial of the only protection afforded complainants by the law under the circumstances. Charges, if preferred by the complainants against the police for dereliction of duty or non-feasance in office (State v.Sheehan, 14 N.J. Mis. R. 466; 185 Atl. Rep. 538) would not afford complainants an adequate remedy at law.
The defendants, as was pointed out by this court in a suit brought by one of the defendants in Benton and Holden, Inc., v.Central Railroad Company of New Jersey, 122 N.J. Eq. 309;
affirmed by the court of errors and appeals, 123 N.J. Eq. 163,
have an adequate remedy at law for any damages which may be sustained by them. The statute law provides for "damages to adjacent property" and also provides that the cost of the improvement "including damages to adjacent property, shall be paid, fifty per centum by the railroad company and fifty per centum by the Board of Public Utility Commissioners, out of funds to be provided for that purpose," and empowers the board, with the consent and approval of the governor, where funds are granted or allotted by the United States government, to allot and credit any or all of such funds so received toward the part of the expense to be borne by the railroad. As already pointed out, the funds to defray the cost of the improvement, as well as damages to adjacent property, have been provided. *Page 213 
To permit the condition herein described longer to continue would be to put a premium on a method of procedure which is defiant of the plain requirements of the law and the exercise of the powers conferred upon the Board of Public Utility Commissioners of this state, the bare statement of which fills the law-abiding and respecting mind with an indignation which commands a complete and instant remedy.
The duty of granting or refusing an injunction is a matter resting in the sound discretion of the court.
The situation now presented by the present bill of complaint and the proofs in support thereof is one in which I deem the power of this court, through its writ of injunction, to be justly called into requisition.
Preliminary injunction will issue.